IN FEDERAL DISTRICT COURT

SOUTH DAKOTA DISTRICT

| | |
|---|---|
| Eric Stormo<br>Plaintiff | \| |
| | \| |
| | \| |
| | \| |
| v. | \| **Second** |
| Defendants, | \| **Amended** |
| | \| **Complaint** |
| City of Sioux Falls, | \| |
| R. Shawn Tornow, | \| |
| Dave Munson, | \| |
| Mike Huether, | \| |
| Pat Kneip, | \| |
| Doug Barthel, | \| |
| John Doe | \| |

1. Eric Stormo, as Plaintiff, claims against each of the named individuals both in their official capacity as employees, agents or elected officials of the City of Sioux Falls and in their individual capacity.

2. Mike Huether is the current Mayor of the City of Sioux Falls. Dave Munson is a former Mayor of the City of Sioux Falls. Doug Barthel is the Chief of Police for the City of Sioux Falls. Pat Kneip was a police officer with the Police Department of the City of Sioux Falls. R. Shawn Tornow is a former Assistant City Attorney for the City of Sioux Falls. John Doe represents those parties whose identity are unknown to Plaintiff.

3. Plaintiff requests attorney fees and compensatory damages from all parties, punitive damages from the individuals.

4. Injunctive relief against the City of Sioux Falls is requested.

## JURISDICTION AND LAW

5. Plaintiff seeks redress under 42 USC 1983 (civil rights violations under color of law). Plaintiff alleges violations of Plaintiff's federal constitutional rights under Article VI

clause 2 (Supremacy), the First Amendment, the Fourth Amendment, the Fifth Amendment and the Fourteenth Amendment all enforced through the Fourteenth Amendment. Plaintiff alleges additional violations of federal laws and rights under color of law including violations of 18 USC 1341 (mail fraud), 18 USC 1343 (wire fraud), 18 USC 1346 (honest services), 18 USC 1512 (witness tampering), 18 USC 1513 (witness retaliation), 18 USC 1702 (obstruction of correspondence) and others each of which violations is an intentional and unreasonable act. Plaintiff alleges civil violations of the Wiretap (18 USC 2520), Stored Wire and Electronic Communications (18 USC 2707) and Computer Fraud and Abuse (18 USC 1030) acts.

6. Plaintiff alleges a pattern and practice of violations of federal law and rights.

7. Defendant City of Sioux Falls has accepted multiple federal grants which have required that the Mayor or his representative certify compliance with federal, state and local law as condition of receiving the grant. These repeated certifications have created a reasonable expectation that the City of Sioux Falls would abide by federal, state and local law. These repeated certifications have created a compliance obligation against the City of Sioux Falls.

8. State law torts include trespass, theft/conversion, conversion, nuisance, tortuous interference with business relationship, invasion of personal privacy, fraudulent misrepresentation and others.

9. Jurisdiction is per Article III, Section 1 and 28 USC 1331,1332,1343(3), (4),2201,2202.

10. Venue is per 28 USC 1391(B).

11. Plaintiff requests trial by jury for compensatory, special, punitive, other damages and any other issues allowed by law.

12. Plaintiff alleges that the enumeration of constitutional and legal violations by the City documented herein establishes a pattern and practice of violative conduct against himself and others by officials and employees of the City of Sioux Falls.

13. That the City of Sioux Falls through its attorneys and other employees has used and abused process of law with malice toward Plaintiff for among other reasons his assertion of rights guaranteed under federal law and the US Constitution.

14. That various City officials including two mayors, the police chief and others were or should have been aware of the violative behavior and abstained from exercising their supervisory authority to halt the violative conduct.

Civil Rights Complaint                                          Page 2 of  71

15. Plaintiff incorporates each and every allegation and averment contained in the various sections of this Complaint as if those allegations and averments were fully set forth in every other section.

16. That Citation numbers or court case numbers will be used to identify to the matters under discussion since the parties to the matter either have or did have access to the relevant records. Citations include but are not limited to: 690, 713, 1943, 1976, 2019, 2171, 2229, 2286, 2320, 2555, 2909, 2922, 2932 . Court cases include but are not limited to: 49SMC07000840, 49SMC06006325, CIV 05-0334, CIV 05-3153, CIV 06-0414, CIV 08-5022, CIV 08-5740.

## Background

17. On a Friday afternoon, November 4th 2005, Plaintiff's wife testified as a witness adverse to the City and certain City employees regarding matters involving the City's alleged violation of federal rights as secured by the constitution and federal law in a case involving Plaintiff's mother. Plaintiff assisted his mother. On the next Monday morning multiple City inspectors and other employees unlawfully entered the curtilage of multiple of Plaintiff's business and personal properties on the pretense of performing code enforcement and other inspections. Plaintiff complained to the City that said inspections involved cover charges, special scrutiny and were intended to intimidate and retaliate against a witness asserting rights protected by federal law. The City persisted with the prosecutions. Plaintiff appealed the findings of the various City employees and agents regarding the various citations issued as a result of the retaliatory inspections alleging a variety of violations of constitutional rights, federal law and state law. The City continued the pattern of unwarranted entry and inspection of Plaintiff's personal and business properties and Plaintiff continued to appeal the citations resulting from the inspections. The City ultimately prevailed on only one of the citations and that via deception. The other cases were dropped or went stale.

18. Concluding that the City had instituted a pattern and practice of violating rights secured by the constitution and federal law, and intended to continue those violations, Plaintiff reported the constitutional and federal law violations of the City and certain City employees to federal law enforcement. This apparently angered some of the reported City employees, agents and elected officials and a plan was apparently developed to retaliate against Plaintiff using City resources and color of law. Various City employees and agents then conspired to develop misleading documents for presentation to the court. After filing those misleading documents with the court and making limited progress, the City and various City employees and agents apparently devised a second scheme. Assistant City Attorney Tornow then developed and filed a false and misleading affidavit alleging that Plaintiff had not responded to one of the City's Complaints and requested ex-parte

Civil Rights Complaint                                        Page 3 of 71

Default Judgment. On the basis of the City's false and misleading affidavit, and apparently without checking the file, the court issued a Default Judgment. After being served with the Default Judgment, Plaintiff filed various motions and memorandums of law asserting and documenting that it was well established law that said Default Judgment was issued without jurisdiction and as a consequence lacked the force of law. Regardless of this notice a few days later a group of City employees entered Plaintiff's property, cut the security protection and seized valuable construction equipment and other property belonging to the Plaintiff. The City employees also searched the property. After Plaintiff was apprised that the equipment was missing, his wife contacted the City of Sioux Falls Police Department to file a theft report. Officer Pat Kneip was assigned to discuss the issue with Plaintiff's wife and called her. Officer Kneip stated that he had investigated and that the City had seized the construction equipment on the basis of a court order and that said equipment was not stolen and that he would not be investigating. Plaintiff's wife explained that the Default Judgment was obtained by deception in violation of state law and was consequently without jurisdiction and force of law and therefore the seizure was a theft. Officer Kneip told Plaintiff's wife that he would not take any action nor would he investigate her allegations of violation of state and other laws in obtaining the Default Judgment.

19. Plaintiff eventually received a hearing from the Court which originally issued the Default Judgment regarding his motion to set aside the Default Judgment. As a result of that hearing the court vacated the Default Judgment ab initio (see attached). Once the Default Judgment was vacated and it was clear that the City had seized the equipment by deception, the City changed strategy and refused to return the property it had seized by deception unless the Plaintiff signed a settlement agreement unfavorable to him regarding the various cover charges. The Plaintiff requested details of where the equipment was and how the equipment was being stored to determine if the equipment was being stored in a manner to preserve its value and OSHA certificability. The City refused to answer those questions. Believing, on the basis of discussions with City employees, that the equipment was not stored on City property and that various City employees and others were or had been using the equipment for personal business, the Plaintiff requested details of where the equipment was and had been. The City has refused to date to provide details regarding whether the equipment was used privately. In August 2011 the City's code enforcement and administrative appeals process was set aside as unconstitutional by the South Dakota Supreme Court. Since the majority of the alleged problems with Plaintiff by the City had been developed under that process Plaintiff reasoned that City may have changed its position. Plaintiff engaged once more with the City to get his property returned reasoning that the City had absolutely no basis to retain the unlawfully seized property. After discussions with the City and concluding that the City had no intention of returning the unlawfully seized equipment Plaintiff then filed this action.

## PARTIES

20. Plaintiff, Eric Stormo, is a citizen and resident of the City of Sioux Falls, County of Minnehaha, State of South Dakota, United States of America.

21. At all times referred to herein, the City of Sioux Falls [City], refers to the City of Sioux Falls, County of Minnehaha, State of South Dakota, United States of America.

22. At all times referred to herein, and between the approximate dates of 05/21/2002 and 05/17/2010 Defendant Dave Munson [hereinafter Munson] was the elected Mayor of the City of Sioux Falls and at all times between those dates was acting in such capacity as an elected official of the City of Sioux Falls. That he was the maker of official executive policy and was consequently acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

23. At all times referred to herein and between the date of May 17, 2010 and the present time of filing this complaint Defendant Michael Huether [hereinafter Huether] was the elected Mayor of the City of Sioux Falls and at all times between those dates was acting in such capacity as an elected official of the City of Sioux Falls. That he was the maker of official executive policy and was consequently acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

24. At all times referred to herein, Defendant R. Shawn Tornow [hereinafter Tornow] was an Assistant City Attorney for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor and City Attorney of the City of Sioux Falls, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

25. At all times referred to herein, Defendant Doug Barthel [hereinafter Barthel or Chief of Police] was the Chief of Police for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls, and that he was the maker of official executive policy regarding police matters, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

26. At all times referred to herein, Defendant Pat Kneip [hereinafter Kneip] was a City of Sioux Falls police officer and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor and Chief of Police, and was acting pursuant to either official policy

or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

27. At all times referred to herein, Brad Hartmann [hereinafter Hartmann] was a Code Enforcement Officer or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

28. At all times referred to herein, Micheal Cooper [hereinafter Cooper] was Director of Planning and Building Services or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

29. At all times referred to herein, D. Peter Nicolai [hereinafter Nicolai] was a Zoning Enforcement Officer or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

30. At all times referred to herein, LuAnn Ford [hereinafter Ford] was a Health Enforcement Manager or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

31. At all times referred to herein, Ron Bell [hereinafter Bell] was a Building Services Manager or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

32. At all times referred to herein, Royal Gamber [hereinafter Gamber] was a Health Enforcement Officer or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

33. At all times referred to herein, Shawna Goldammer [hereinafter Goldammer] was a Zoning Enforcement Manager or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

34. At all times referred to herein, Michael Roth [hereinafter Roth] was Assistant Director of Building Services in the Planning and Zoning Department or similar for the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

35. At all times referred to herein, John Doe [hereinafter Doe] was an employee of the City of Sioux Falls and at all times herein was acting in such capacity as an agent, servant, and employee of the City of Sioux Falls, and was acting under the direction and control of the Mayor of the City of Sioux Falls and other supervisors subordinate to the Mayor, and was acting pursuant to either official policy or the custom and practice of the State of South Dakota and the City of Sioux Falls and was acting under color of law.

36. That at all times referred to herein, the named employees and elected officials of the City including Munson, Huether, Tornow, Hartmann, Gamber, Nicolai, Roth, Bell Goldammer, Ford, Kneip, Barthel, Doe and others named and not named herein acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of South Dakota and the City of Sioux Falls and pursuant to their respective official status and authority as identified herein.

## WELL ESTABLISHED LAW

37. That at all relevant times the law was well established that absent exigent circumstances a warrant was required to search or inspect property not in public view.

Civil Rights Complaint                                             Page 7 of 71

Said legal standards having been established by *Camara v County and City of San Francisco; 387 US 523 (1967)*, *See v Seattle; 387 US 541 (1967)*, *State v Arthur Stip; 246 NW 2d 897 (1976)*, *Freeman v Blair;85-5169 (8th Circuit,1986)* and others.

38. That said standards of warrant requirement were known to the City and Tornow as a result of the statement of law accompanying various suppression orders suppressing evidence collected by prior warrantless inspections and searches conducted by City employees including one issued on or about October 12th, 2005 in the matter of CIV 05-03034 by Magistrate Doyle Sage.

39. That at all relevant times it was well established law that Article VI clause 2 of the US Constitution established supremacy of federal constitutional and codified law.

40. That at all relevant times it was well established law that the code enforcement procedure employed by the City was unconstitutional. That as early as September 19th, 2005 the City and Tornow were aware that the code enforcement procedure employed by the City was unconstitutional in multiple regards. At that time Tornow cited *City of Pierre v Blackwell; 2001 SD 127* [hereinafter *Blackwell*] in a court filing. In *Daily v City of Sioux Falls;2011 SD 48 ¶ 20* [hereinafter *Daily*] the SD Supreme Court observed the similarities between the cases when ruling that the Sioux Falls Code Enforcement procedure was unconstitutional for many of the same reasons identified in *Blackwell*.

41. That at all relevant times it was well established pursuant to 18 USC 1512 that it was a federal crime to use deception or harassment to hinder or delay the report of the possible commission of a federal offense to a federal law enforcement officer.

42. That at all relevant times it was well established law pursuant to 18 USC 1513 that it was a federal crime to knowingly and intentionally retaliate, including causing economic harm, against any person who provided truthful information to a federal law enforcement officer.

43. That at all relevant times it was well established law that it was a federal crime to retaliate against an immediate or extended family member of a witness asserting federal rights.

44. That at all relevant times it was well established law pursuant to 18 USC 1951 that it was a federal crime to use robbery or extortion under color of law to obstruct interstate commerce.

45. That at all relevant times it was well established law that failing to investigate when a reasonable person would have investigated establishes intention and knowledge under the doctrine of willful blindness or deliberate ignorance. *US v Whitehill;07-1309;8th Cir 2008*

Civil Rights Complaint                                                        Page 8 of 71

46. That at all relevant times it was well established South Dakota law that in order for an ex-parte Default Judgment to have the force of law the matter underlying the Default Judgment must meet the statutory criteria for issuance of a Default Judgment. Conversely Default Judgments issued which did not confirm to the statutory criteria are without force. See *Kramer v Sullivan; 225 NW 2d 591*; *Roso v Henning; 1997 SD 82*.

47. That at all relevant times it was well established South Dakota law that it was a crime to prepare a materially false affidavit with the intention of filing said affidavit before a court of the State of South Dakota.

48. That at all relevant times it was well established South Dakota law that it was a crime to file a materially false affidavit before a court of the State of South Dakota.

49. That at all relevant times it was well established law that trespassing was a state criminal offense.

50. That at all relevant times it was well established law that theft including theft by deception or theft by threat including threat under color of law was a state criminal offense.

51. That at all relevant times it was well established that the seizure of private property without judicial authorization was a violation of the Fourth Amendment. See *Soldal v Cook County; 506 US 56*.

52. That at all relevant times it was well established law that a prosecutor is not immune from civil suit for giving advice which is violative of constitutional rights.

53. That at all relevant times it was well established law that a prosecutor is not immune from civil suit for creating false and misleading affidavits.

54. That at all relevant times it was well established law that a prosecutor is not immune from civil suit for filing false and misleading affidavits.

55. That at all relevant times it was well established law that many of the acts complained of were RICO predicates.

56. That on or about October 11th, 2006 the City was notified that the code enforcement process employed by the City was unconstitutional when a Judge of the 2nd SD Circuit ruled that appeal from the City's administrative findings were not allowed by state law.

57. That at all relevant times it was well established law that the business of residential and commercial rentals was a business engaged in interstate commerce for the purposes of 18 USC 1951.

58. That at all relevant times it was well established law that the misappropriation, conversion or theft of assets, including assets owned by private parties, in amounts greater than $5,000, by the employees of a municipal government receiving more that $10,000 in federal funds annually, is a federal offense pursuant to 18 USC 666.

59. That at all relevant times it was well established law that the preparation of a false document or destruction of documents which could reasonably be expected to be relevant to a subsequent federal matter such as a prosecution under 18 USC 1951 or 18 USC 1341 is a federal offense pursuant. to 18 USC 1512. See <u>US v Ronda</u>; (11th Cir 2006), 455 F.3d 1273.

## AWARENESS OF VIOLATIVE ACTIVITY

60. That the numerous public allegations of deprivation of rights and complaints that the code enforcement process employed by the City was not constitutional put the Mayors and Chief of Police on notice regarding such violations.

61. That the numerous judicial determinations that the code enforcement process employed by the City was not constitutional put the Mayors and Chief of Police on notice regarding such violations.

62. That Dan Daily's complaints of violative conduct involving Tornow and the City code enforcement process and Administrative Appeals process were or should have been well known to the City, Mayors and Chief of Police through the Daily lawsuit (Civ 08-2478 filed May 29th, 2008) and media reporting. Daily's complaints included: 1) selective enforcement arising from the fact that even though 60 homes in his neighborhood were known to the City to have the alleged violation he was the only one ticketed for it; 2) that he was cited for the alleged violation in retaliation for and temporally coincident to publication of an editorial he wrote critical of the City which was published in the Argus Leader; 3) that the administrative hearing process was unconstitutional on its face and as administered; 4) that during hearings the hearing officer was advised by Tornow who was also the prosecutor how to resolve questions of law; and 5) the hearing officer was not disinterested.

63. That during the relevant period Mayor Munson was reported in the local newspaper at least 15 times as reiterating his "get tough on landlords" or his "get tough on code enforcement" policy.

64. That during the relevant period Mayor Huether was reported in the local newspaper at least 21 times as reiterating his "get tough on landlords" or "get tough on code enforcement" policy.

65. That despite all of the violative conduct described herein, and in the media, and the violative conduct described in the various Notice's of Harm, Tornow has claimed in various forums that during his career with the City he was never the subject of disciplinary action.

66. That the foreseeable result of the get tough speeches combined with the belief of the City's officials, employees and agents that the City has promised to pay damages for violative conduct and the City's history of not disciplining violative behavior was to inculcate Sioux Falls City employees with the belief that they would not be investigated, disciplined or prosecuted for violative acts committed in the course of "getting tough".

67. That on or about September 14th, 2008 the Argus Leader, a newspaper with wide circulation in Sioux Falls, ran a story reporting that the City had formed a committee of top officials to undertake a review of the code enforcement process.

68. The September 14th, 2008 article recounted that the City was citing persons for failing to maintain their property to a specific standard allegedly on the basis of health and safety but that the City was not maintaining publicly accessible City property to that same standard.

69. That on or about February 19th, 2009 the Argus Leader ran a story about the results of the review. Said story concentrating on the complexities of the process. The results of the audit report were not made public at that time.

70. That it is a reasonable inference that if the audit report was favorable regarding the process it would have been made public.

71. The City, the Mayor, the Police Chief and all the City Council members knew or should have known on completion of the code enforcement review in 2009 that the City was operating an unconstitutional process in multiple regards. A reasonable inquiry should have learned that City employees were violating well established law, the City had been notified of the violative conduct by multiple judicial officials, and that there had been many plausible complaints from victims of the violative conduct.

72. That on or about June 12, 2007 the Argus Leader, a newspaper with wide circulation in Sioux Falls, ran a story regarding health inspectors inspecting the property of a alleged health code violator under police escort. Said article was notice that the inspectors and police department were very likely violating protected constitutional and federal rights. That said article was notice that the City was violative of federal rights in that its nuisance ordinance was subject to the unfettered discretion of the enforcement officers.

73. That on or about August 7th, 2003 the Argus Leader, a newspaper with wide circulation in Sioux Falls, ran a story regarding code enforcement which included a

photograph of Brad Hartmann an employee of the City of Sioux Falls entering a property and searching inside sealed containers. There was no mention that Hartmann had obtained a warrant to do so. Said article was notice that the inspectors were very likely violating protected constitutional and federal rights particularly those rights secured by the fourth amendment.

74. That Plaintiff and others had placed the City and Mayor on notice through various filings in administrative hearings run by the City and through filings in state court that numerous inspectors and other enforcement employees and police officers were involved in violative conduct.

75. That numerous police officers attended court hearings where City personnel testified to violative acts and adduced photographs and other evidence which could only have been obtained by entry into the curtilage. That said police officers observed the testimony, said officers having knowledge of the lack of a warrant and said officers failing to file charges or initiate other disciplinary actions regarding the violations.

76. That many if not all of the enforcement officers and their management identified herein were present in various Administrative Appeals hearings where the Sage memorandum of law was discussed. Tornow, Hartmann, Nicolai, Ford, Gamber and others were present.

77. That Plaintiff had filed multiple formal Notice of Harm statements with the City Attorney preparatory to litigation and that these notices alleged violative behavior. That the most recent Notice of Harm filed with the City Attorney was filed on or about February 2nd, 2009.

78. That Plaintiff had filed multiple other formal Notice of Harm statements with the City Finance Officer preparatory to litigation thereby satisfying the requirements of SDCL 3-21 . Said Notices of Harm including those filed on August 8th, 2007;  February 2nd 2008, and September 30th, 2009.

79. That an aggrieved victim of violative behavior had placed news machines near City Hall and other public buildings where it would have been difficult for the mayors and police chief not to notice. The news machines were filled with literature outlining multiple alleged constitutional violations. The machines also encouraged people to visit www.siouxfallsclassaction.com to learn more and to institute a class action for the violative conduct of the various code enforcement employees and agents.

80. That an aggrieved victim of violative behavior advertised a website www.siouxfallsclassaction.com which among things complained that the Sioux Falls Police refused to take reports of theft of multiple of his news machines disseminating

literature critical of the City and had also refused to accept literature educating them as to the reasons they should take said reports.

81. That www.siouxfallsclassaction.com contained content complaining of among other things violative acts including the shifting of the burden of proof such that the property owner has to prove no violation occurred as opposed to the City being required to prove a violation, no meaningful appeal from the findings of the code enforcement officer, the enforcement of vague statutes and the willful blindness and deliberate ignorance on the part of the police department.

82. That by May 11, 2007 and later, the City was dismissing code enforcement cases assigned to certain judicial officers in the 2nd South Dakota Circuit Court immediately before trial. Said dismissals apparently resulting from the City's concern that the cases would be dismissed with prejudice as a result of the Court's history of findings of violative conduct on the part of the City and the consequent reluctance of said judicial officials to use the resources of the court to give credence to the City's code enforcement process.

83. That according to testimony and finding of fact number 83 in the *Daily* matter the Mayor delegated his authority to choose the hearing officer to the City Attorney and abdicated his responsibility per the Ordinance. The Mayor's delegation of his obligation to choose the administrative appeals hearing officer calls into question whether the panel was validly convened and had any jurisdiction at all. The Mayor's delegation of his obligation to choose the hearing officer was material to the relative disinterestedness of the hearing officer and was concealed from the Plaintiff and presumably others.

84. That the Mayors knew that the hearing officer was chosen by the City Attorney not by himself as required by the Ordinance, that the hearing officer was advised during the hearing on matters of law by the City Attorney and that the City ordinance reversed the ordinary burden of proof and required the accused to prove themselves innocent.

85. That on or about December 19th, 2011, Dan Daily, an aggrieved victim of various violations of federal rights by City actors under color of law via the code enforcement process and the Administrative Appeals process described his complaints to the City Council and Mayor during a scheduled City Council meeting. Said descriptions of violative conduct placing the Mayor, Chief of Police and others on notice that there was a pattern and practice of violative conduct and that said violative conduct was causing harm.

86. That on or about February 6th, 2012, Rodney Fitts, an aggrieved victim of various violations of federal rights by City actors under color of law described his complaints which include trespassing, entering non-public areas of his properties without invitation and intimidation of his tenants to the City Council and Mayor during a scheduled City

Civil Rights Complaint                                                   Page 13 of 71

Council meeting. Said descriptions of violative conduct placing the Mayor, Chief of Police and others on notice that there was a pattern and practice of violative conduct and that said violative conduct was causing harm.

## ACTS

### SHARED OFFENSES

87.  That the acts enumerated herein had in common that they depleted the resources available to the Plaintiff to operate his business engaged in interstate commerce.

88. That the acts enumerated herein harmed Plaintiff's business and livelihood including those portions engaged in interstate commerce.

89. That the acts attributed to City officials, employees and agents which are enumerated herein were conducted under color of law.

90. Plaintiff has, in some cases, alleged that criminal acts occurred. Plaintiff intends that those allegations be read as intentional and inherently unreasonable acts which damaged Plaintiff. The tort coincident with the crime act may be conversion, or fraudulent misrepresentation, or invasion of privacy, or any of the other torts alleged.

91. Plaintiff alleges that retaliation by a public employee or official is intentional interference with First Amendment rights under color of law and that such retaliatory acts are each a 1983 Civil Rights violation.

92. Plaintiff has, in some cases, alleged that various acts occurred which are potentially outside the statute of limitations for recovery of damages. Those acts are alleged to show pattern and practice.

### GROUP I OFFENSES
### Warrantless Searches

93. That on multiple occasions the City employees Hartmann, Gamber, Nicolai and others yet to be identified entered the curtilage of Plaintiff's houses and business locations so that portions of the Plaintiff's properties and curtilage not in public view could be inspected or searched. These warrantless searches being in violation of the Fourth Amendment to the US Constitution.

94. That said standards requiring warrants were or should have been known to the Defendants.

Civil Rights Complaint                                    Page 14 of  71

95. That at various times Hartmann, Gamber and Nicolai have confirmed in the presence of the Plaintiff they have entered Plaintiff's property without a warrant.

96. That at various times Hartmann, Gamber and Nicolai have confirmed in the presence of the Plaintiff that they have been instructed by their supervisors to enter property without a warrant.

97. That at various times, including an Adminstrative Appeal Hearing on October 17th, 2007 Hartmann, Gamber and Nicolai have confirmed in the presence of the Plaintiff that they have been told that they will be indemnified for their unlawful acts when acting on the instructions of their supervisors or according to the accepted custom of the City.

98. That at various times Tornow has stated in the presence of the Plaintiff that it is his legal opinion that Sioux Falls City ordinances authorize entry into the curtilage without warrant.

99. That at various times Tornow has stated in the presence of the Plaintiff that it is his legal opinion that Sioux Falls ordinances override and supersede Federal and State supreme court rulings because the City of Sioux Falls is chartered as a home rule city.

100. That at various times Tornow has stated in the presence of the Plaintiff that it is the policy of the City of Sioux Falls to instruct its employees that it is lawful to enter properties without warrants.

101. That, absent spoliation, the City of Sioux Falls has in its possession photographs and other evidence which could only have been acquired by entering and searching the curtilage of Plaintiff's property.

102. That the Plaintiff has never been served with a valid warrant for entry.

103. That to date the City of Sioux Falls has not lawfully obtained a warrant to search any of the Plaintiff's properties.

104. That on or about April 3rd, 2009 Tornow acting with malice directed, encouraged and facilitated City employees to trespass upon Plaintiffs real and personal property knowing that said City employees had no lawful right to do so.

105. That Tornow's advice, to various City employees that the Default Judgment was valid and thereby authorized their trespass on Plaintiff's real and personal property, was constitutional violative and was not an immune activity.

106. That on or about April 3rd, 2009 City employees did trespass upon Plaintiffs real and personal property having no lawful right to do so.

107. That on or about December 1st, 2008 an unknown City employee, believed to be Peter Nicolai, inspected portions of Plaintiff's house not in public view and consequently issued a citation for failure to adequately caulk window frames.

108. That the City uses warrantless searches to damage business in interstate commerce by interfering with tenants quiet enjoyment and thereby to harass and intimidate landlords who complain about them.

109. That based on records provided by the City, on or about the dates listed below, Plaintiff's properties listed below were entered and evidence seized from areas not in public view. Said averment being based on photographs and other evidence seized by the City and shown to Plaintiff, or transcript statements of City employees or other written documentation of admission of the seizures.

- November 7th, 2005          800 Summit, 1603 S Norton, 207 N French, 610 W 43rd

- November 17th,2005          1603 S Norton, 610 W 43rd St

- December 12th, 2005         1603 S Norton, 610 W 43rd St

- August 15th, 2006           1603 S Norton

- August 1st, 2007            207 N French

- August 9th, 2007            1603 S Norton

- December 1st, 2008          1603 S Norton

- April 3rd, 2009             Lift and other personal property

110. Plaintiff alleges that City officials and employees trespassed on his properties at these various times knowing that they were entering private property in violation of the law.

111. Plaintiff alleges that City officials and employees knew said trespassing was unlawful and tried to conceal their trespass by by fraudulently misrepresenting that they had a right to trespass, or by refusing to produce or spoliating evidence of their trespass.

112. Plaintiff alleges damages from said trespass including but not limited to tortuous interference with his business, the cost of time wasted defending himself against the administrative citations, the loss of rent and other damages resulting from the unlawful trespass.

Civil Rights Complaint                                   Page 16 of  71

113. That as recent as 2012 the City was actively performing unwarranted searches of properties and landlord Rodney Fitts complained to the Mayor and City Council of the practice in a City Council meeting on February 6th, 2012.

## GROUP 2 OFFENSES
### Obstruction of Correspondence

114. That on multiple occasions, including in the matter of the appeal of Citation A0690, Michael Roth an employee of the City of Sioux Falls, on or about December 5, 2005 and January 5, 2006 removed and opened mail addressed to the Administrative Appeals Board when he was not a member of the Administrative Appeals Board and was not acting on behalf of the Administrative Appeals Board.

115. That Tornow stated in the presence of the Plaintiff and before the Court that said mail was removed by Roth and that said mail was never delivered to Administrative Appeals Board.

116. That City employees not members of the Administrative Appeals Board answered mail addressed to the Administrative Appeals Board.

117. That the City sued for payment in Small Claims Court after notifying Plaintiff he had not appealed the Citation A0690 correctly.

118. That in Court the City argued, through its Attorney Tornow, that Plaintiff's appeal of the City actions was in error, said error due to the fact that Plaintiff had appealed the actions of the Administrative Appeals Board and not the actions of Michael Roth who was not a member of the Administrative Appeals Board but had opened the mail and answered in lieu of the Administrative Appeals Board.

119. That pursuant to federal laws including 18 USC 1702 (Obstruction of Correspondence), Plaintiff has a reasonable expectation that his mail will only be opened and/or answered by the party to whom it is addressed. Plaintiff alleges that obstruction of correspondence is intentional and inherently unreasonable and is also the tort of invasion of privacy.

120. That Tornow's statements confirmed the existence of a scheme to deceive Plaintiff into appealing the decision of the Appeals Board by having someone not the Appeals Board open the mail and reply were material factors in the court finding for the City.

121. That the artifice of opening the Appeal Boards mail and replying in lieu of the Appeals Board was intended to and did deprive Plaintiff of his right to due process.

Civil Rights Complaint                                   Page 17 of 71

122. That the official City practice of obstruction of correspondence shows a pattern and practice of conduct violative of federal rights.

## GROUP 3 OFFENSE
### Mail Fraud and Wire Fraud

123. That the City of Sioux Falls and the Defendants have used the mails and wires to attempt to collect fines unconstitutionally ordered by Code Enforcement Officer Hartmann and others. That said attempts did not involve proving facts and law as required by well established law, but rather the City alleged the validity of determinations they knew or should have known were violative so they could collect the fine as a debt against the City without proving the facts and law.

124. That the City of Sioux Falls knew that the system it was employing for administrative appeals was not constitutional and that the debts lacked any force of law. The City knew it since at least 2005 when Assistant City Attorney Tornow cited *City of Pierre v Blackwell; 2001 SD 48* in a Magistrate court filing. Blackwell concludes that punishments assessed by the executive branch without judicial confirmation were without force of law.

125. That Nicolai has stated to Plaintiff's wife that more than half the people the City levied unsubstantiated fines against actually paid the fine. Media reports have verified that said fine income was a significant source of income for the City.

126. The South Dakota Supreme Court confirmed in *Daily v City of Sioux Falls; 2011 SD 48* that the system of administrative citations and appeals instituted by the City was unconstitutional.

127. The South Dakota Supreme Court commented in *Daily v City of Sioux Falls* that the system of administrative appeals and citations was similar to that used by the City of Pierre and found unconstitutional in *Blackwell* in 2001 and prior to the majority of the events documented herein.

128. That Tornow sued on behalf of the City of Sioux Falls and used the mails and wires to collect said decreed fines as a debt in Small Claims Court knowing that under current South Dakota law, as interpreted by the State Supreme Court, that the City had no right to collect said fines without judicial confirmation of the facts and law and that in many cases the underlying allegation was tainted by material omissions and false statements by representatives of the City of Sioux Falls. Court cases in which the mails were used to communicate between the parties include but are not limited to: 49SMC07000840, 49SMC06006325, CIV 05-0334, CIV 05-3153, CIV 06-0414, CIV 08-5022, CIV 08-

Civil Rights Complaint

5740.Court cases involving the use of the wires include 49SMC0700840 where the City communicated with the Clerk and others via email.

129. The City collects various inspection and citation fees by mail and dispatches inspection vehicles by wireless.

130. That the participants in these matters used the wires to communicate between and among themselves.

131. That pursuant to federal laws including 18 USC 1341 Mail Fraud and 18 USC 1343 Wire Fraud that Plaintiff has a reasonable expectation that neither the mails nor the wires would be used to further fraudulent schemes. Plaintiff alleges that acts meeting the mail and wire fraud criteria are intentional and inherently unreasonable and also satisfy the criteria for the tort of fraudulent misrepresentation.

## GROUP 4 OFFENSES
### Mail and Wire Fraud

132. That Hartmann, Nicolai, Gamber and others used the mails to communicate alleged violations of law which they knew or should have known were not true.

133. That it is routine, that when citing violators of an alleged offense of property maintenance, zoning, electrical and other codes that the City of Sioux Falls its officials, employees and agents   make incomplete, partial and misleading statements of the law which are in aggregate materially misleading.

134. That said omissions of fact and law to include the failure to note that the applicable code being the one at time of construction not the code as currently implemented, the failure to mention enumerated exceptions to the general case allowed by the current or as constructed code, the failure to mention judicial precedence contradicting the stated interpretation of the code, the failure to mention superior federal and state law which contradicts the stated interpretation and the interpretation of the code in a unreasonable reading that does not correlate with the statements of intent made by the promulgating officials.

135. That supervisory personnel including the Mayors, Cooper, Goldammer, Bell and Ford abrogated their responsibilities to stop the practice of incomplete, partial and misleading statements which were in aggregate materially misleading.

136. That pursuant to federal laws including 18 USC 1341 Mail Fraud and 18 USC 1343 Wire Fraud that Plaintiff has a reasonable expectation that neither the mails nor the wires would be used to further fraudulent schemes. Plaintiff alleges that acts meeting the mail

Civil Rights Complaint

and wire fraud criteria are intentional and inherently unreasonable and also satisfy the criteria for the tort of fraudulent misrepresentation.

137. Said offenses to include a letter from Tom Fields, City of Sioux Falls Electrical Inspector, dated August 1st, 2007 stating that it was a violation of electrical code to have overhead wires closer than 10 feet to the ground. Said letter being a material misrepresentation as it failed to note an exception for using or repairing prior installations compliant at the time of construction.

138. Said offenses to include an email dated April 5th, 2007 stating that it was a violation of code to have overhead wires closer than 10 feet to the ground and misrepresenting that prior construction could not remain in service in contradiction to well established law.

139. Said offenses to include a letter dated August 10th, 2007 whereby Gamber characterized concrete pavers as rubble.

121. Said offenses to include email dated April 5th, 2007 stating that it was a violation to park an unlicensed boom trailer on Plaintiff's property. This was materially misleading because if it was a trailer, commercial trailers do not require license plates. This was materially misleading because trailer mounted construction equipment is not required to be and is not eligible to be licensed pursuant to South Dakota Department of Transportation regulations.

140. That having certified in various federal grant applications that the City has adopted a nationally recognized code without significant modification the City in fact adopts multiple codes covering the same subject and enforces the most restrictive combination of the codes.

141. That in recent versions of the electrical code there is a requirement that a neutral wire be provided to facilitate later conversion from manual to energy saving sensor switches. The code also contains accessibility exceptions to the requirement if it is possible to later add the wire. The City has a current policy of not acknowledging those exceptions which unnecessarily and dramatically increases wiring costs.

142. That the City issued citations and forced appeals hearings on said citations (3085 May 6th, 2010 and 3194 September 9th, 2010) regarding parking a boat on a property where it had been allowed prior to changes in the zoning ordinances. Plaintiff was required to devote resources to assisting his 80+ year old mother in defending against the citations. At the time the citations were issued the City was in possession of uncontroverted evidence showing said property had been used for boat parking prior to passage of the zoning regulation. At the time the City knew the use as boat parking was compliant but persisted in attempting to defraud Plaintiff's mother of her right to park boats there.

Civil Rights Complaint                                                          Page 20 of 71

143. The City collects various inspection and citation fees by mail and dispatches inspection vehicles by wireless.

144. That the participants in these matters used the wires to communicate between and among themselves.

145. Said offenses establishing a pattern and practice of violative behavior.

## GROUP 5 OFFENSES
### Mail and Wire Fraud

146. That Tornow used the mails to communicate to the Plaintiff the fraudulent affidavit instrumental in the unlawful seizure of Plaintiff's property. Said fraudulent affidavit mailed to Eric Stormo on or about March 20th, 2009. Said fraudulent affidavit intended to deceive Plaintiff into believing that the seizure was lawful.

147. That various other conspirators involved in the unlawful seizure of Plaintiff's property, including Officer Kneip, used the wires to communicate regarding with the various fraudulent schemes. Officer Kneip and Plaintiff's wife communicating over the wires on April 3rd, 2009 at approximately 12:42 PM and 3:38 PM during which Officer Kneip attempted to persuade Plaintiff's wife that the City's court order was valid.

148. The City collects various inspection and citation fees by mail and dispatches inspection vehicles by wireless.

149. That the participants in these matters used the wires to communicate between and among themselves.

150. That pursuant to federal laws including 18 USC 1341 Mail Fraud and 18 USC 1343 Wire Fraud that Plaintiff has a reasonable expectation that neither the mails nor the wires would be used to further fraudulent schemes. Plaintiff alleges that acts meeting the mail and wire fraud criteria are intentional and inherently unreasonable and also satisfy the criteria for the tort of fraudulent misrepresentation.

## GROUP 6 OFFENSES
### Witness Tampering

151. That certain of the Defendants including Tornow, Nicolai, Hartmann, Gamber, Ford, Goldammer, Roth, Doe and potentially others unknown and unnamed, used or conspired to use deception to corruptly persuade Plaintiff and others that the law allowed them to enter property to conduct searches without first seeking a warrant. Said statements to have occurred on November 4, 2005, January 5, 2006, August 7, 2007, October 17, 2007, May 8, 2008 and December 1, 2008 during administrative appeals hearings.

152. That the City attempted to maintain the deception by arguing City supremacy over federal and state law in the Daily case.

153. That the City attempted to maintain the deception arguing City supremacy over federal and state law in Administrative Appeals concerning the Plaintiff on December 1st, 2008 and May 19th, 2009.

154. That the City issued citations and forced appeals hearings on said citations (3085 May 6th, 2010 and 3194 September 9th, 2010) regarding parking a boat on a property where it had been allowed prior to changes in the zoning ordinances. Plaintiff was required to devote resources to assisting his 80+ year old mother in defending against the citations. At the time the citations were issued the City was in possession of uncontroverted evidence showing said property had been used for boat parking prior to passage of the zoning regulation. At the time the City knew the use as boat parking was compliant but persisted in attempting to defraud Plaintiff's mother of her right to park boats there.

155. That the deception as to whether the Plaintiff and others had an enforceable constitutional right had, as a foreseeable effect, the delay of the Plaintiff's report of Defendants illegal behavior to law enforcement officials.

156. That the Plaintiff and others had a reasonable expectation that Defendants would not engage in said behavior as it was enjoined by the witness tampering laws including 18 USC 1512(b)(3) and 18 USC 1512(d)(2). Plaintiff alleges that witness tampering and retaliation is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law, fraudulent representation, tortuous interference with business relationships, nuisance and conversion.

## GROUP 7 OFFENSES
### Witness Retaliation

157. That on the first working day after Plaintiff's wife appeared as an adverse witness to the City; and Plaintiff assisted Plaintiff's mother in a civil action brought by the City of Sioux Falls pursuant to Ordinance 2.60 et seq; the Defendants including Hartmann, Gamber, Ford and potentially others participated in warrantless inspections of Plaintiff's properties including those engaged in interstate commerce.

158. That despite being apprised of the intimidating nature of the warrantless inspections so soon after Plaintiff's wife appeared as a witness adverse to the City of Sioux Falls, Defendants Tornow, Gamber, Nicolai, Hartmann, Ford and possibly others conspired to and did attempt to prosecute said violations resulting from the intimidating inspections.

159. That the unwarranted inspections of Plaintiff's property were intended to and did retaliate against a witness asserting a defense of federally guaranteed rights.

160. That Plaintiff has evidence of said unwarranted inspections as recent as December 8[1st], 2008 when City employees provided evidence of an unwarranted inspection of 1603 S Norton a property owned by Plaintiff.

161. That the City issued citations and forced appeals hearings on said citations (3085 May 6th, 2010 and 3194 September 9th, 2010) regarding parking a boat on a property where it had been allowed prior to changes in the zoning ordinances. Plaintiff was required to devote resources to assisting his 80+ year old mother in defending against the citations. At the time the citations were issued the City was in possession of uncontroverted evidence showing said property had been used for boat parking prior to passage of the zoning regulation. At the time the City knew the use as boat parking was compliant but persisted in attempting to defraud Plaintiff's mother of her right to park boats there.

162. That Plaintiff has anecdotal evidence of more recent inspections including some in 2012 but the City is refraining from providing pictures during discovery which documents their unlawful incursions.

163. That the unwarranted inspections did have the foreseeable and actual effect of delaying the report of the acts to federal law enforcement officers in violation of federal laws including 18 USC 1512(b)(3) and 18 USC 1512(d)(2). Plaintiff alleges that witness tampering and retaliation is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law, fraudulent representation, tortuous interference with business relationships, nuisance and conversion.

164. That Plaintiff had a reasonable expectation that color of law would not be used to intimidate him, punish him or delay or attempt to prevent his appearance to exercise and defend federal rights.

## GROUP 8 OFFENSES
### Witness Retaliation

165. That the City of Sioux Falls was informed by Notice of Harm on February 2nd, 2009 that Plaintiff had complained to federal law enforcement about the ongoing conduct of warrantless searches under the color of law by employees of the City of Sioux Falls.

166. That Tornow verbally communicated his knowledge to Plaintiff that the Plaintiff had reported him to federal law enforcement for, among other things, authorizing and encouraging warrantless searches.

Civil Rights Complaint                                                Page 23 of 71

167. That Plaintiff communicated to City and Tornow in a Motion to Sanction before the 2nd Circuit Court, State of South Dakota, that Plaintiff had complained to federal law enforcement.

168. That Tornow's supervisor , Robert Amundson, was notified by letter on or about February 2nd, 2009 that Tornow was, among other things, making materially misleading statements in adjudicative proceedings. The letter also stated that Plaintiff feared retaliation by Tornow and consequently would again be reporting his actions to federal law enforcement.

169. That subsequent to having knowledge that Plaintiff had complained to federal law enforcement Tornow on or about March 17th, 2009 filed materially misleading and false affidavits in South Dakota State Circuit Court in support of an ex-parte default judgment against Plaintiff.

170. That it was reasonably foreseeable that the conspiracy to develop and file the false affidavit would cause economic and other harm to the Plaintiff who was known to be a potential and actual witness against Tornow and others.

171. That the conspiracy to develop or the actual development of false and/or misleading affidavits is not part of the job description or official job of an Assistant City Attorney for the City of Sioux Falls or any other City employee.

172. That the conspiracy to file or the actual filing of false and/or misleading affidavits is not part of the job description of an Assistant City Attorney for the City of Sioux Falls or any other City employee.

173. That the conspiracy to or the actual intimidation of witnesses is not part of the job description or official job of any City employee.

174. That the conspiracy to or the actual retaliation against witnesses is not part of the job description or official job of any City employee.

175. That the conspiracy or actual development of false affidavits, the filing of false affidavits, the intimidation of witnesses and the retaliation against witnesses has become a custom of employees of the City of Sioux Falls.

176. That Plaintiff informed Tornow, Tornow's supervisor Robert Amundson,  the City, and the State Circuit Court on or about March 24th, 2009 of the deception effectuated by the false affidavit by Tornow. Plaintiff did so by motioning to vacate the ex-parte Default Judgment. Said motion including citations of fact and law substantiating that the Default Judgment was unequivocally issued without jurisdiction and was without force of law.

Civil Rights Complaint                                                Page 24 of  71

177. That the City and Tornow, with reasonable knowledge that the Default Judgment was without jurisdiction and therefore invalid, then directed employees of the City of Sioux Falls to use the fraudulently obtained ex parte default judgment to seize valuable construction equipment Plaintiff was using in interstate commerce.

178. That Plaintiff's wife confirmed the presence of the construction equipment (a WorkForce XLB4232) owned by her husband's business setup for use on the property at 207 N French at approximately 4:15 PM on the afternoon of April 2nd, 2009.

179. That Plaintiff's wife observed a City of Sioux Falls truck drive by the property seeming to examine it at approximately 4:15 PM on the afternoon of April 2nd, 2009.

180. That Plaintiff's wife drove by 207 N French Ave sometime between 10:00 and 11:00 AM and observed that the XLB4232 was no longer on the property and that a padlock with a cut hasp was left behind.

181. That Plaintiff's wife discussed the situation with neighbors to 207 N French and concluded that City employees had seized the lift on April 3rd, 2009.

182. That at approximately 12:19 PM on April 3rd, 2009 Plaintiff's wife called the non-emergency police number to report the lift missing and presumed stolen.

183. That at approximately 12:42 PM Plaintiff's wife received a call back from a person identifying themselves as Officer Kneip who alleged that the City had a court order to sieze the lift.

184. That Plaintiff's wife and Officer Kniep discussed the allegation that the court order was invalid due to the deceptive affidavit developed and filed by Defendant Tornow.

185. That on April 3rd, 2009 Officer Kniep told Plaintiff's wife over the telephone that he was not going to investigate the complaint the lift was stolen because no crime had been committed.

186. That the construction equipment seized as a result of the conspiracy to develop and file the false affidavit would very likely cost more than $5,000 to replace based on prices paid for similar equipment at a local auction.

187. That a search of the internet for similar equipment for sale within a radius of 200 miles yielded an XLB4232 for sale for $11,950.

188. That in totality the depletion of Plaintiff's resources to pursue interstate commerce were in aggregate more than $5,000.

189. That the City of Sioux Falls receives more than $10,000 in federal funds annually.

190. That the theft of the equipment was a violation of 18 USC 666 and that Plaintiff has a reasonable expectation not to have expensive equipment stolen using City resources.

191. That when, on April 3rd, 2009, Plaintiff's wife called to report the construction equipment stolen, City of Sioux Falls police officer Pat Kneip was assigned to call her back. Plaintiff's wife explained the reasons and law as to why the Default Judgment was invalid and therefore the equipment was stolen by deception, but Kniep refused to accept the complaint or file an official complaint.

192. That Kneip's refusal to accept a stolen property report regarding the construction equipment, or to contact any one of a variety of sources of neutral legal experts to determine the truth of the allegations regarding the Default Judgment, or to investigate the state and federal law violations alleged by Plaintiff violated Plaintiff's equal protection rights.

193. That Kneip's refusal, on April 3rd, 2009, to accept a stolen property complaint or investigate the alleged circumstances invalidating the Default Judgment constituted willful blindness or deliberate ignorance in support of the conspiracy to unlawfully seize the construction equipment.

194. That Kneip's refusal, on April 3rd, 2009 to accept a stolen property complaint or investigate the alleged circumstances invalidating the Default Judgment constituted willful blindness or deliberate ignorance in support of the conspiracy to unlawfully retaliate against the Plaintiff as a witness.

195. That Plaintiff has not received any written documentation from the City of Sioux Falls Police Department documenting the actions taken by the department or its reasons for refusing to pursue the complaint.

196. That the conspiracy by Tornow and others unknown to develop and file the false affidavit was a willful and intentional act.

197. It was reasonably foreseeable that the conspiracy to develop and file the false affidavit would cause harm to the Plaintiff who was known to be a potential and actual federal witness against Tornow and others.

198. That the City issued citations and forced appeals hearings on said citations (3085 May 6th, 2010 and 3194 September 9th, 2010) regarding parking a boat on a property where it had been allowed prior to changes in the zoning ordinances. Plaintiff was required to devote resources to assisting his 80+ year old mother in defending against the citations. At the time the citations were issued the City was in possession of uncontroverted evidence showing said property had been used for boat parking prior to passage of the zoning regulation. At the time the City knew the use as boat parking was

compliant but persisted in attempting to defraud Plaintiff's mother of her right to park boats there.

199. That these actions had the effect of causing economic harm to Plaintiff and had the foreseeable result of retaliating against Plaintiff for his complaints to federal law enforcement in violation of federal rights and laws including 18 USC 1513(e).

200. That these actions had the effect of delaying Plaintiff in reporting his complaints to federal law enforcement in violation of federal rights and laws including 18 USC 1512(b)(3), 18 USC 1512 (d)(2). Plaintiff alleges that witness tampering and retaliation is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law, fraudulent representation, tortuous interference with business relationships, nuisance and conversion.

201. That these actions employed the mails and the wires in a fraudulent scheme which did deprive Plaintiff of the use of his valuable property.

202. That Plaintiff had a reasonable expectation that color of law would not be used to retaliate against him for exercising his right to file a complaint with a federal law enforcement official.

203. That Plaintiff had a reasonable expectation that color of law would not be used to induce him to delay his report to a federal law enforcement official.


## GROUP 9 OFFENSES
### Misappropriation of City Resources

204. That employees of the City of Sioux Falls named in this action and employed by the City of Sioux Falls used the mails, the wires and the resources of their offices with the City of Sioux Falls to retaliate against, harass and intimidate Plaintiff.

205. That the employees of the City of Sioux Falls named in this action and employed by the City of Sioux Falls gained personally from this misuse of City resources and color of law powers.

206. That said personal gain included but was not limited to harassing and intimidating witnesses into delaying or not reporting violations of law and thereby avoid criminal penalties.


Civil Rights Complaint

207. That said personal gain included but was not limited to harassing and intimidating witnesses into to not seeking redress by civil suit and thereby minimizing risk of personal financial penalties.

208. That Plaintiff's construction equipment was not returned to him after the Default Judgment was vacated  in an attempt to extort a settlement from Plaintiff of the personal charges against various City employees. Said Default judgment being vacated orally on August 10th, 2009 with a written order filed September 10th, 2009.

209. That Plaintiff's construction equipment was valued at more than $5,000 and its seizure and conversion was a violation of various federal laws including 18 USC 666.

210. That City has intentionally and unlawfully obtained intercepts of various wire, oral and electronic communications in transit and in storage in violation of the Wiretap Act also called the Electronic Communications Privacy Act [Wiretap] and the Stored Wire and Electronic Communications Act [SWECA].

211. That City has intentionally and unlawfully employed intercepts of various wire, oral and electronic communications in transit and in storage in violation of the Wiretap and SWECA acts..

212. That City has intentionally and unlawfully disseminated intercepts of various wire, oral and electronic communications in transit and in storage in violation of the Wiretap and SWECA acts.

213. That the City has intentionally and unlawfully obtained information in violation of the Computer Fraud and Abuse Act [CFAA].

214. That the City has intentionally and unlawfully disseminated information in violation of the CFAA.

215. That the City has intentionally and unlawfully used information in violation of the CFAA.

216. That Plaintiff had a reasonable expectation that City resources would not be used to harass and intimidate witnesses since the misdirection of public resources is unlawful under both state and federal law. Plaintiff alleges that witness tampering and retaliation is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law, fraudulent representation, tortuous interference with business relationships, nuisance and conversion.

## GROUP 10 OFFENSES
### Equal Protection

217. That Plaintiff Eric Stormo has notified the City of Sioux Falls, Hartmann, Nicolai, Tornow and others of violations of law being committed by other property owners and that said violations have neither been logged nor prosecuted.

218. That, on or about November, 1st, 2006 various representatives of the City of Sioux Falls including Tornow and Nicolai were notified that the property owner at 1601 S Norton had installed a propane burning furnace without a permit in his garage and was operating said furnace in violation of the law.

219. That said furnace exposed Plaintiff's adjoining property to a real hazard of explosion and fire.

220. That various representatives of the City of Sioux Falls including Tornow and Nicolai have been notified that the property owner at 1601 S Norton had installed an approximately fifty gallon propane tank without a permit in violation of the law.

221. That various representatives of the City of Sioux Falls including Tornow and Nicolai have been notified that the property owner at 1601 S Norton had installed said un-permitted propane tank closer to the property line than allowed by fire code in violation of the law and that even if the furnace was successfully inspected, the tank needed to be moved.

222. That the refusal of the City of Sioux Falls to timely investigate and prosecute the violations of certain offenders for inappropriate reasons denies Plaintiff the equal protection of the laws and violates both state and federal rights.

223. That the immediately dangers part of the situation was resolved as the result of the owner selling the property and the new owner not operating the furnace or maintaining the propane tank.

224. That the Court found in Daily v City of Sioux Falls, including but not limited to findings numbers 14 and 57, that the City did not enforce the law equitably and did not act on complaints pursuant to a constitutional methodology or plan.

225. That the City of Sioux Falls and the various employees notified of these violations willingly and intentionally conspired to further the violation of the applicable ordinances of the City of Sioux Falls.

226. That the City of Sioux Falls and various employees retaliated against Plaintiff by requiring  that Plaintiff conform to a higher standard of conduct than other persons.

227. That the City of Sioux and various employees engaged in selective enforcement and interpretation.

228. That the City of Sioux Falls engaged in selective enforcement because if they did enforce the law as they had done on Plaintiff virtually every property in town would require modification to conform and they believed that such enforcement would result in repeal of the law as it had in other cities.

## GROUP 11 OFFENSES
Due Process

229. That Defendants City, Tornow, Hartmann, Nicolai, Gamber, Roth, Bell and others have violated the Due Process rights of Plaintiff by failing to publish written rules for conducting hearings or by failing to abide by consistent and bilateral rules when holding hearings.

230. That Plaintiff was told fax appeals would be accepted then later refused to consider appeals sent by fax. This happened to Plaintiff regarding a hearing scheduled for August 8th, 2007.

231. That City has no published rules constituting time and refuses to abide by state civil court rules changing the rules regarding time without notice or basis.

232. That City employees and agents operating the process applied vastly different evidentiary rules to the submissions of the City than they did to the submissions of the Plaintiff.

233. That Plaintiff's experiences were similar to those experienced by _Daily_ and well documented in his circuit court case CIV 08-2478 and subsequently found unconstitutional by the South Dakota Supreme Court.

234. That via the fraudulent Default Judgment the City imposed unconstitutionally cruel and unusual punishment on Plaintiff.

235. That even after the South Dakota Supreme Court found in Daily that the City practice of imputing offenses by the executive branch and requiring the accused to prove their innocence was unconstitutional, the City continues the practice as of this Complaint.

236. That even after the South Dakota Supreme Court found in Daily that the hearings lacked a valid discovery process the City did not change its process of allowing the

accused to only see what it is going to present and to bar access to exculpatory data it is not presenting.

237. That the City and the other Defendants were operating a Bunco Fraud (changing the rules anytime someone might be successful) in violation of federal and state law.

238. That these actions violated Plaintiff's due process and other rights.

## GROUP 12 OFFENSES
## CONVERSION

239. That Defendants have conspired to unlawfully retain control of Plaintiff's construction equipment to extort a settlement of the cover charges levied against Plaintiff.

240. Upon Motion and Hearing the Default Judgment fraudulently obtained by Tornow on behalf of the City was vacated ab initio on or about August 10th, 2009 verbally with the order filed September 10th, 2009.

241. That as of the date of this filing, almost three years after the seizure of said equipment, the equipment has not been returned to Plaintiff.

242. That South Dakota state law does not require that the parties effectuating the theft benefit personally.

243. That in addition to the the personal property seized the Default Judgment interfered with and effectively seized other property interests possessed by Plaintiff. Rights such as the right to be free from arbitrary search were seized. The effect of the seizures of these property rights was to effectively prevent operation of his business thereby damaging his livelihood.

244. That despite multiple requests through Plaintiff's attorney the Defendants have refused to return the construction equipment seized as a result of the deceptively obtained Default Judgment.

245. That City employees have demanded as a condition of returning the lift that Mr. Stormo agree to a settlement releasing them from liability.

246. Plaintiff alleges that the Tornow knew and intended that armed officers were dispatched to various of the Plaintiff's properties, under color of law, upon the pretense of the fraudulent default judgment, to unlawfully trespass and seize Plaintiff's property including one Workforce lift with a replacement cost exceeding $5,000.

247. Plaintiff alleges that Tornow knew and intended that such actions would result in weapons being possessed and brandished under color of law in the course of unlawfully trespassing on Plaintiffs property and when unlawfully seizing Plaintiff's property including said Workforce lift.

248. Plaintiff alleges that Tornow knew and intended that said armed officers acting under color of law would themselves trespass and were intended to act to encourage and support the trespass of other City of Sioux Falls employees, contractors, agents and guests.

249. Plaintiff alleges that Defendants knew or should have known that the use of armed police, directly and through the use of nominees, had been previously planned and instigated by Tornow to intimidate people who questioned City policy, to wit Dan Daily and others.

250. Plaintiff alleges that the Defendants had the power to stop Tornow's improper direct and indirect use of armed police but had failed to act to punish the participants or to prevent future occurrences.

251. Plaintiff alleges that the Defendants refused to account for or return Defendants property including the lift upon demand.

252. Plaintiff alleges that Tornow and the Defendants by their connection to Tornow through the conspiracy, and their failure to control and discipline Tornow, and their failure to ensure the property was returned, committed armed robbery pursuant to South Dakota law and Federal law (18 USC 1951).See US v Dobbs 05-2249 8th Cir 2006.

253. That armed robbery is an intentional tort of conversion under South Dakota law and common law.

254. Plaintiff alleges that Defendants are liable for direct and punitive damages as a result of this incident. At a minimum and pursuant to SDCL 21-3-3 the direct damages include expenses arising from the loss of use of the converted property, damage to the converted property, fair market value for use of the converted property, failure to return the converted property and interest for the period of time Plaintiff was denied quiet enjoyment of the lift.

255. Plaintiff alleges that the seizure of the lift was a fourth amendment violation.

## GROUP 13 OFFENSES
## POLICE INVOLVEMENT

256. That the City of Sioux Falls Police Department and Police Officer Kneip refused to investigate the credible report of the theft by deception regarding Plaintiff's property.

257. That City of Sioux Falls Police Department and Police Officer Kneip's refusal to investigate the allegations of creating and filing a false affidavit reported by Plaintiff's wife constituted willful blindness and deliberate ignorance.

258. That City of Sioux Falls Police Department and Police Officer Kneip furthered the conspiracy to create and file the false affidavit.

259. That City of Sioux Falls Police Department and Police Officer Kneip conspired to use deception to delay and prevent Plaintiff's reports to federal law enforcement by alleging that no violations of law or federal rights had occurred and that the property was seized as the result of a valid court order.

260. That Police Officer Kneip did not seek to review a copy of the alleged affidavit or court file and evaluate the written evidence prior to making his decision.

261. That in the matter of the investigation of the alleged theft of Plaintiff's property Kneip was empowered to act as a policy maker for the City of Sioux Falls.

262. That City of Sioux Falls Police Department and Police Officer Kneip's willful blindness and deliberate ignorance furthered the conspiracy to continue denying Plaintiff the use of his illegally seized property.

263. That City of Sioux Falls Police Department and Police Officer Kneip's willful blindness and deliberate ignorance furthered the conspiracy to return the equipment only on Plaintiff's agreement to a settlement favorable to the City and various City employees.

264. That the City of Sioux Falls failed to have a reasonable and effective policy in place for investigating wrongdoing in the City Attorney's office.

265. That the City of Sioux Falls failed to have a reasonable and effective policy in place for investigating wrongdoing by City employees.

266. That the Chief of Police was responsible for ensuring that the training City of Sioux Falls police officers was adequate.

267. That the Chief of Police was responsible for but failed to establish a reasonable and effective policy for investigating wrongdoing in the City Attorney's office.

268. That the Chief of Police was responsible for but failed to establish a reasonable and effective policy for investigating wrongdoing by City employees.

269. That there were no exigent or urgent circumstances preventing a thorough or proper investigation in these matters.

## GROUP 14 OFFENSES
## COVER CHARGES

270. That the City of Sioux Falls and its employees and agents performed inspections and issued cover charges for various offenses.

271. That by cover charge Plaintiff means an action under color of law against a victim which is intended to establish leverage with the intent of intimidating the victim into not asserting protected rights. Generally but not always cover charges are intended to directly and personally benefit the state actor by suppressing complaints of wrongdoing by the aggrieved victim against the state actor. By state actor Plaintiff means a person acting under color of law on the authority of some entity of government including but not limited in this matter to City officials, employees and agents.

272. That on or about September 25th, 2007 in a meeting where Plaintiff's wife was requesting records regarding Plaintiff's administrative appeal hearings Nicolai told Plaintiff's wife that the City would continue to subject Plaintiff to special scrutiny including cover charges and depletion of resources until Plaintiff agreed to meet the City's demands.

273. That the City of Sioux Falls and its employees and agents issued and threatened to issue and prosecute cover charges in an attempt to gain a favorable settlement with the Plaintiff for both official and personal acts.

274. That demanding a favorable settlement of personal liability in the cover charges and related matters as a condition of releasing Plaintiffs seized property constitutes extortion under color of law in the meaning of the 18 USC 1951. Plaintiff alleges that extortion under color of law is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law.

275. That threatening Plaintiff with additional cover charges and depletion of resources if he did not acquiesce to unlawful demands personally benefiting City employees constitutes extortion under color of law in the meaning of the 18 USC 1951. Plaintiff

alleges that extortion under color of law is intentional and inherently unreasonable and in this context constitutes suppression of First Amendment rights under color of law.

276. That the general findings in <u>Daily</u>, including finding of fact 51, establishes that during the period covered by this complaint that it was City policy to initiate cover charge prosecutions for the purposes of depleting the resources and intimidating parties who raised objections to the Code Enforcement process.

277. That said cover charge prosecutions were malicious prosecutions and were initiated with malice and for improper purpose.

## GROUP 15 OFFENSES
## RETALIATION AND INTIMIDATION TO INTERFERE WITH FIRST AMENDMENT RIGHTS

278. It is well established law that it is a first amendment right to petition the government for a redress of grievances; and to serve as a truthful witness in a lawful court; and to encourage others to petition for a redress of their grievances; and to encourage others to serve as a truthful witness before a lawful court.

279. "It is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." See <u>Pendelton v St Louis County</u>; 98-2691 8th Circuit.

280. It is well established law that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper" See <u>Freeman v Blair</u>; 85-5169; 8th Circuit.

281. Plaintiff alleges that on April 3rd, 2009 Tornow retaliated against Plaintiff for exercising his first amendment rights when directing the unlawful seizure of the lift under color of law. Plaintiff alleges that it was the intent of Tornow and the other Defendants approving his actions that Plaintiff would be intimidated and that Plaintiff would be denied first amendment rights.

282. Plaintiff alleges that that said seizure and trespass was consequently a violation of Plaintiff's first amendment rights on that date.

283. Plaintiff alleges a retaliatory motive for the seizure can be inferred from several facts. One, Tornow had confronted Plaintiff that he was aware that Plaintiff had complained to federal law enforcement about Tornow's repeated violations of search and seizure law. Two, Plaintiff mailed to Tornow on February 2, 2009 a motion to sanction against Tornow in the state court matter of CIV 08-5740 and 08-5022. The motion

pointed out that: 1)Tornow had filed affidavits signed by others which he knew or should have known contradicted facts he Tornow was personally aware of; 2) Tornow himself was making misleading statements to the courts in his pleadings; 3) that Tornow was forum shopping by filing multiple cases on the same matters and dismissing those which did not get him the desired judge; and 4) that Tornow was retaliating against Plaintiff for filing the complaint with federal law enforcement. Tornow failed to respond to the private sanction motion and Plaintiff mailed the motion to sanction to the court on March 5, 2009. Less than two weeks after Plaintiff filed the motion to sanction Tornow on March 17th, 2009 Tornow filed the false affidavit and obtained a Default Judgment based on the false affidavit. Plaintiff was notified of the default judgment on March 21st, 2009 and filed motions in opposition on March 24th, 2009. Tornow ignored Plaintiff's filings in opposition to the Default Judgment pointing out that the Default Judgment was invalid (as it was later ruled to be) and directed others to in the seizure of the lift and trespass upon Plaintiff's property on April 3rd, 2009.

284. Plaintiff alleges that the Defendants retaliated against Plaintiff's family on May 6th, 2010 and September 9th, 2010 when issuing citations to Defendants mother for alleged zoning violations when the City was aware that said acts were not zoning violations and as that the use preceded the zoning change and that said family members had previously defended themselves by presenting uncontroverted evidence of said prior use and that res judicata applied on the issue.

285. Plaintiff, as a courtesy so that Defendants would not be rushed when the discovery period opened,  mailed his initial document production request to Defendant's attorney on August 5th, 2012.

286. Plaintiff alleges that on August 22nd, 2012 approximately seven months after this action was filed that the Defendants retaliated against Plaintiff by using a non-judicial administrative process virtually identical to the process found unconstitutional in Blackwell and Daily, but named something different, and issued a condemnation of Plaintiffs property as a dangerous building and threatened Plaintiff with demolition. These actions were intended to and did  force Plaintiff to chose between losing a valuable property or to taking time out from prosecuting this action.

287. Plaintiff alleges that said dangerous building determination was timed to interfere with and did interfere with Plaintiff's prosecution of his claims in this action.

288. Plaintiff alleges that the timing of the action infers retaliation, when various City officials admitted knowing of the peeling and missing paint for several years and admitted knowing that said siding was cedar and did not require paint. The allegations of missing siding also were much exaggerated and were irrelevant to the durability of the structure itself.

289. Plaintiff alleges that Defendants knew that none of the alleged issues were sufficiently urgent to warrant the timing of the enforcement action.

290. Plaintiff alleges that the Defendants implementation of and use of an unconstitutional process is a violation of the Supremacy clause.

291. Plaintiff alleges that the Defendants implementation of and use of an unconstitutional process violates the due process clauses of the fifth and the fourteenth amendments.

292. Plaintiff alleges that selecting him for enforcement infers retaliation when the ordinance is obviously not a widely enforced ordinance, when there are considerably lesser remedies that condemning the building, when Defendant's were known not to have enforced it on some properties inspected prior to Plaintiff's, when Plaintiff's building should have been a low enforcement priority as the property was in an industrial area, when Plaintiff's building should have been a low enforcement priority (as compared to for example day cares) as the property did not have children in residence.

293. Plaintiff alleges that the presence of at least one of the named Defendants (Huether) at said hearing, who supervised those City officials making such findings, implies coercion of those officials making the determinations and convening the hearings.

294. Plaintiff alleges that the conspirators used their law enforcement powers to monitor the conversations, emails, searches and browsing of potential opponents of the administration including targets of the conspirators.

295. Plaintiff alleges that several of his properties and his mother's properties were unlawfully entered by parties unknown since this action was filed. Doors have been broken open. Doors have been apparently opened with no apparent violence and left open inviting other unlawful entry. Storm windows have been pried off. Plaintiff alleges these actions were arranged by the conspirators in retaliation for Plaintiff exercising his first amendment rights and filing the instant claim.

296. Plaintiff alleges that the doors were left open, for among other reasons, to give a code enforcement official an excuse to unlawfully enter the building as has been documented by other property owners.

297. Plaintiff notes that he has suffered hundreds of dollars of direct vandalism of his properties since filing this action. More vandalism in dollar terms than suffered in aggregate in the remainder of his life. Plaintiff alleges that the Defendants have unlawfully used their law enforcement powers to retaliate by arranging and not resolving otherwise easy to resolve vandalisms. Plaintiff alleges increased unsolved vandalism is

part of the pattern and practice employed by the conspirators such as in the Zip feed mill matter.

298. Plaintiff alleges that the City has used the pretext of tree damage to remove trees from Plaintiffs property which did not otherwise meet the requirements for being removed and they have done so without notice in an attempt to damage him and silence his lawful exercise of first amendment rights.

299. Plaintiff alleges that the City has attempted to deliberately damage Plaintiff by placing bus stops in front of his rental properties depriving him of the use of the on-street parking in an attempt to damage him and silence his lawful exercise of first amendment rights.

300. Plaintiff alleges that Defendants on the dates mentioned herein and using the methods claimed herein intended to and did attempt to, and did intimidate Plaintiff under color of law with the object of suppressing or interfering with his first amendment rights.

## TORTS

301. The following describe some of the torts intentionally perpetrated on Plaintiff by various of the Defendants in the course of the various acts and conspiracies.

### CONVERSION OF TANGIBLE PERSONAL PROPERTY

302. Plaintiff alleges that the Tornow knew and intended that armed officers were dispatched to various of the Plaintiff's properties, under color of law, upon the pretense of the fraudulent default judgment, to unlawfully trespass and seize Plaintiff's property including one Workforce lift with a replacement cost exceeding $5,000.

303. Plaintiff alleges that Tornow knew and intended that such actions would result in weapons being possessed and brandished under color of law in the course of unlawfully trespassing on Plaintiffs property and when unlawfully seizing Plaintiff's property including said Workforce lift.

304. Plaintiff alleges that Tornow knew and intended that said armed officers acting under color of law would themselves trespass and were intended to act to encourage and support the trespass of other City of Sioux Falls employees, contractors, agents and guests.

305. Plaintiff alleges that Defendants knew or should have known that the use of armed police, directly and through the use of nominees, had been previously planned and

instigated by Tornow to intimidate people who questioned City policy, to wit Dan Daily and others.

306. Plaintiff alleges that the Defendants had the power to stop Tornow's improper direct and indirect use of armed police but had failed to act to punish the participants or to prevent future occurrences.

307. Plaintiff alleges that the Defendants refused to account for or return Defendants property including the lift upon demand.

308. Plaintiff alleges that Tornow and the Defendants by their connection to Tornow through the conspiracy, and their failure to control and discipline Tornow, and their failure to ensure the property was returned, committed armed robbery pursuant to South Dakota law and Federal law (18 USC 1951).See US v Dobbs 05-2249 8th Cir 2006.

309. That armed robbery is an intentional tort of conversion under South Dakota law and common law.

310. Plaintiff alleges that Defendants action and inaction establishing liability were within the statute of limitations for conversion.

311. Plaintiff alleges that Defendants are liable for direct and punitive damages as a result of this incident. At a minimum and pursuant to SDCL 21-3-3 the direct damages include expenses arising from the loss of use of the converted property, damage to the converted property, fair market value for use of the converted property, failure to return the converted property and interest for the period of time Plaintiff was denied quiet enjoyment of the lift.

## CONVERSION OF INTANGIBLE PERSONAL PROPERTY

312. Plaintiff alleges that Defendants intended to and did use their color of law powers and constitutionally violative conduct to waste his professional time and thereby convert his intangible right to use his time as he sees fit.

313. Plaintiff is a graduate of the University of Nebraska College of Engineering with a degree in Computer Science and as such his professional time is valuable.

314. Plaintiff alleges that Tornow and the other Defendants intended to unlawfully and under color of law deny Plaintiff the right to rent his property under the circumstances he was otherwise entitled to.

315. Plaintiff specifically claims that Tornow and the other Defendants intended to unlawfully deny Plaintiff the right to employ his professional skills by threatening him

under color of law and requiring him to spend his time responding to and defending himself from the threats instead of performing other professional work.

316. Plaintiff alleges that Defendant's actions constitute a conversion of intangible personal property.

## NUISANCE

317. Plaintiff alleges that Defendant's actions constitute a private nuisance in the sense of SDCL 21-10-1 and the common law as documented in the Second Restatement of Torts.

318. Plaintiff alleges that all unlawful acts perpetrated against Plaintiff were unreasonable acts.

319. Plaintiff alleges that the acts of Tornow and the other Defendants including the armed commercial robbery of his equipment, repeated use of the "administrative appeals" process determined to be unconstitutional in <u>Daily</u> the excessive and repeated scrutiny, the repeated misrepresentations of various City ordinances, the repeated and intentional misrepresentations of various City adopted codes, the repeated and intentional misrepresentation of the law of search and seizure, the repeated levying of unconstitutional penalties, the repeated trespasses, the creation of false or misleading affidavits for purposes of filing them in judicial proceedings and the filing of false or misleading affidavits in judicial proceedings were all individually and as a whole unlawful and unreasonable.

320. Plaintiff alleges that it was intended by Defendants and also a reasonably foreseeable result of the Defendant's actions that the Plaintiff would feel insecure in his lawful use of his property including for the purposes of interstate commerce for which he held it.

321. Plaintiff alleges that as consequence of requiring Plaintiff to meet higher standards to occupy or rent his properties than was actually required by law or others commercially similarly situated Defendants damaged Plaintiff and are liable for his additional expenses and loss of income.

322. Plaintiff alleges that Defendants intended to use unlawful procedures under color of law to dramatically reduce Plaintiff's ability to rent the property, interfere with interstate commerce and reduce the value of the property. As is documented by the request for default judgment filed by Tornow, the Defendants intended to place unreasonable restrictions on the use of all Plaintiff's properties including requiring all future occupants of any rental, or commercial or privately owned property of Plaintiff to be subject to unannounced and warrantless searches of the property.

323. Plaintiff alleges that the Defendants attempted to destroy the value of the buildings on Plaintiff's real property by demanding upgrades neither required or authorized by law. Specifically the default judgment demanded that the various properties be upgraded to current codes as opposed to correcting any existing code violations. Upgrading to current codes is a de facto condemnation of an older property because it is generally impossible for older properties to meet current codes as stairways are too steep, or there are not enough inches between the toilet and the sink or any of a variety of reasons.

324. Plaintiff alleges, that once such property restrictions were in place, and as has happened previously to other victims of the Defendants, that co-conspirators of the Defendants would have approached Plaintiff offering to buy the house for a fraction of the assessed value.

325. Plaintiff alleges that by examining the property ownership of the persons appointed by the mayors to various City boards one can find numerous cases where said board member purchased a property after a code enforcement action at a substantial discount and rapidly placed the property in rental service.

326. Plaintiff alleges, that based on history of other similar events, once the designated co-conspirator owned the property the Defendants would have negotiated a settlement waiving most of the demands placed on Plaintiff and thereby resulting in the new buyer receiving a ready to rent property for a fraction of its worth.

327. That the Defendants were on notice, pursuant to the statements on September 18th, 2008 of Larry Person and others as quoted in the Argus Leader, that Tornow were using the code enforcement process to hold property owners responsible for the actions of third parties over which the owners had no control.

328. Plaintiff alleges that the City has used the pretext of tree damage to remove trees from Plaintiffs property which did not otherwise meet the requirements for being removed and they have done so without notice.

329. Plaintiff alleges that the City has attempted to deliberately damage Plaintiff by placing bus stops in front of his rental properties depriving him of the use of the on-street parking.

330. Plaintiff alleges that the actions of Tornow and the other Defendants were intended to and did unlawfully and under color of law deprive Plaintiff of his enjoyment of the properties he owned and controlled. Said properties including 207 N French, 1603 S Norton,  800 S Summit, 1817 S Willow, 610 W 43rd St, etc and that such deprivations included the right to use his properties as rentals with present and future income and also attempted to deprive Plaintiff of significant equity in his property.

## TORTUOUS INTERFERENCE WITH PLAINTIFF'S BUSINESES

331. Plaintiff alleges that Tornow intended to and did tortuously interfere with the operation of his rental business.

332. Plaintiff alleges that he had for many years rented his various properties and had an expectation of continuing to do so.

333. Plaintiff alleges that he had for many years provided computer and telecommunications consulting and had an expectation of continuing to do so.

334. Plaintiff alleges that Tornow knew or should have known and the remaining Defendants could have learned that the properties had been rented as the issue had come up in several "administrative appeals".

335. Plaintiff alleges that the actions, and particularly the unlawful actions, of the Defendants outlined in the complaint were unjustified and unreasonable interference with Plaintiff's rental business.

336. Plaintiff alleges that the unconventional and unlawful actions of the Defendants were intended to deplete and did deplete Plaintiff of resources of time and money to operate his rental business and that said depletion caused a loss of rental income.

337. Plaintiff alleges that the unconventional and unlawful actions of the Defendants were intended to deplete and did deplete Plaintiff of resources of time and money to operate his other businesses in interstate commerce and that said depletion caused a loss of business income.

338. Plaintiff alleges that the loss of rent and other income, increase in capital expense and increased operating expense all reducing profitability were caused by and were reasonably foreseeable to be caused by Defendants actions depleting Plaintiffs resources and therefore Plaintiff is entitled to recover those damages.

339. Plaintiff alleges that Defendants were complicit in Tornow's interference under color of law as a result of their active encouragement of his actions in multiple press releases, by signing and implementing unconstitutional ordinances, by providing armed force to support his constitutionally violative actions, by failing to punish or discipline his constitutionally violative actions, by authorizing or not preventing the use of other City resources and support provided to Tornow including the other City of Sioux Falls employees who participated in the tortuous interference.

## FRAUDULENT MISREPRESENTATION

340. Plaintiff alleges damage to his businesses in interstate commerce including his rental business as a result of various fraudulent misrepresentations by City officials, employees and others acting on their behalf.

341. Plaintiff alleges that Defendants and others under their control and on their behalf continuously and repeatedly misrepresented that the administrative appeals process was constitutional when they knew or should have known it was not on the basis of prior South Dakota Supreme Court rulings.

342. Plaintiff alleges that Defendants and others under their control and on their behalf continuously and repeatedly misrepresented that the City of Sioux Falls had the right to inspect portions of property not in public view, including entering private interior areas, when they knew or should have known it was not true on the basis of prior US Supreme Court rulings, South Dakota Supreme Court rulings, 8th Circuit rulings, state court rulings and federal district court rulings.

343. Plaintiff alleges misrepresentations by omission such as neglecting to mention exceptions in the building or electric code or other similar examples.

344. Plaintiff alleges misrepresentation by the repeated statements by Tornow and other City officials and employees that US Supreme court precedence regarding search and seizure could be superseded by a City ordinance and City ordinances were not subject to the Supremacy clause.

345. Plaintiff alleges misrepresentation by ambiguity such as Tornow interpreting an ordinance to allow faxed appeals one week and claiming such faxed appeals were not allowed the next week depending on which was the most advantageous interpretation at the time. Said violations also documented in Daily.

346. Plaintiff alleges misrepresentation by ambiguity such as Tornow interpreting an ordinance to measure time differently and more restrictively than state law to eliminate otherwise valid appeals and not correcting the ambiguity in the ordinance.

347. Plaintiff alleges direct misrepresentation such as representations that the court case CIV 08-5740 or 08-5022 was in a status subject to default judgment, or that such fraudulently awarded default judgment had the force of law, or that there were ordinances or codes that prevented the use of a lift on private property.

348. Plaintiff alleges reliance on said misrepresentations to the extent that because there is a presumption of neutrality on the part of public employees and officials he was obligated to accept such statements as true until they could be rebutted by research.

349. Plaintiff alleges Defendants intended that he and others rely on said misrepresentations to the detriment of Plaintiff and that such intent is evidenced by the fact that the Defendants never attempted to stop the misrepresentations either by instructing City employees as to the lawful position nor by issuing public statements of the lawful position.

350. Plaintiff alleges Defendants, City employees and others working on their behalf made misrepresentations to third parties such as judges, hearing officers, the public at large through press releases, City employees, jurors and others with the intent that said misrepresentations were acted upon to Plaintiff's detriment.

351. Plaintiff alleges Defendants intended that said third parties rely on their fraudulent misrepresentations and take action detrimental to Plaintiff.

352. Plaintiff alleges that the statements of Officer Kneip on April 3rd alleging that a court order allowed seizure of the lift was a material misrepresentation as Kneip and Tornow were or could have both been in possession of facts directly impeaching the validity of the court order.

353. Plaintiff alleges that Chief Electrical Inspector Tom Fields sent a letter on August 1st, 2007 misrepresenting to Plaintiff that his overhead wires at his property were in violation of the electrical code when in fact said wires were lawfully installed and subject to the previously lawfully installed  exception in the electric code. Inspector Fields misrepresenting the legality of the installation by omitting to mention the applicable exceptions.

354. Pursuant to an administrative appeals hearing on November 6th, 2006, various City employees including Tornow and Peter Nicolai misrepresented that they had the lawful right to enter Plaintiffs property at will and inspect it. They further misrepresented that they could lawfully and without a warrant inspect non-public portions of Plaintiff's property by entering on a neighbor's property. They further misrepresented that Sioux Falls City ordinances superseded US Supreme Court and 8th Circuit precedence.

355. Peter Nicolai, a City employee, emailed on April 5th, 2007 a statement that the lift was going to be ticketed for not having a license plate. Nicolai misrepresenting whether commercial trailers required a license plate under state law and whether construction equipment required a license plate under state law.

356. Plaintiff alleges that the statements of Tornow internal to the City and between the date the default judgment was awarded March 17th, 2009 and the date of seizure April 3rd, 2009 to acquire City resources to seize the lift and trespass was fraudulent misrepresentation as he knew or should have known that the court order was without authority. He represented possession of a court order and omitted mentioning that he

knew or should have know that the order was invalid as it was obtained by deception and without jurisdiction.

357. Plaintiff alleges damages in the form of labor researching the legality of and responding to the fraudulent acts, lost rent, utilities on the unoccupied properties, capital expense beyond that required by law, maintenance expense beyond that required by law, punitive, incidental and consequential damages all as a result of Defendant's fraudulent misrepresentations.

358. Plaintiff alleges that Munson and Tornow knew that they were in violation of the ordinance authorizing the administrative appeals boards because the City Attorney not the Mayor was selecting the hearing officer. Consequently, they were making fraudulent misrepresentations and concealing the fact that the administrative appeal did not meet the conform to the ordinance and was not lawfully convened or empowered despite their representations to the contrary.

## WIRETAP AND STORED WIRE AND ELECTRONIC COMMUNICATIONS

359. It is well established law that there is a federal private right of action for violations of the Wiretap Act pursuant to 18 USC 2510 et seq to 2521 including section 2520.

360. It is well established law that there is a federal private right of action for violations of the Stored Wire and Electronics Communications Act (SWECA) pursuant to 18 USC 2701 et seq including section 2707(a).

361. It is well established law that unlawful use of a Wiretap or SWECA product does not have to be either knowingly or directly disclosed to meet the use prohibition of the law. See 18 USC 2511(1)(c),(d) and (e).

362. Allegations of Wiretap and SWECA have an "inquiry notice" standard and the standard of pleading is knowledge of facts leading a prudent person to inquire.

363. It is well established that gaining advantage in a civil suit, or obtaining information to use prosecuting or settling a civil suit is not an allowed use of information obtained via Wiretap or SWECA and such use is unlawful and that such use is subject to the private right of action. See 18 USC 2520(g)and18 USC 2511(1)(c),(d) and (e).

364. Plaintiff alleges that on several occasions since filing the lawsuit he has confidentially discussed matters with a prospective expert witness who as a former federal law enforcement agent and intelligence official had significant expertise in white collar crime. Said expert also has contacts with other expert witnesses and is in a position

to recommend specific experts. The parties discussed the basis for and the potential damages which might be awarded by the court in various forums in Plaintiff's case. These discussions always took place via telephone as said expert is located in the Washington DC area. These conversations took place prior to the planned meeting of Plaintiff and Defendant's attorney on September 17th, 2012.

365. Plaintiff alleges, that during the Rule FRCP 26(a)(1)(A) conference meeting September17, 2012 at the offices of Defendant's attorneys, Defendant's attorneys named several settlement dollar figures which the attorney stated were in his opinion unrealistic and would be out of the range his client's would consider for a settlement. Other figures were named as possibly being considered. A significant number of the specific dollar figures were those figures discussed with Plaintiff's prospective expert and as such indicated knowledge of the telephonic conversation with said expert.

366. Plaintiff alleges that it is unlikely that the various numbers mentioned by Defendant's attorneys would have been the object of random conversation particularly given position espoused that Plaintiff was only entitled to damages for conversion of the lift.

367. Plaintiff notes that since this action was filed, the City has parked equipment and vehicles in front of Plaintiff's house on several occasions including on April 17th, 2012. Parking a vehicle close to Plaintiff's residence to collect signals intelligence would be an expected action for a variety of technical reasons to gain information to be used in future Wiretaps. To Plaintiff's knowledge, the City had not parked vehicles near Plaintiff's house prior to the action being filed so the change in behavior is troubling.

368. Plaintiff is not aware of any path, other than by being passed information from the unlawful use of Wiretap information, whereby Defendant's attorney could have become aware of such figures. Whether the dollar figures were conveyed to him directly by the Defendants or suggested indirectly or in veiled terms by Defendants or others, Plaintiff believes the disclosure by Defendants' attorney indicates unlawful use of Wiretap product.

369. Plaintiff alleges that given the other false affidavits filed in this matter, and given the other misappropriation of resources in this matter, it is not at all unreasonable to believe that Defendants sought Wiretap information under color of law using false affidavits and then used the information to further their own personal interests.

370. Plaintiff doubts Defendant's attorney was apprised of the source of the information he possessed and would consequently not be liable for damages. Such doubt premised on the fact that he would have been more careful not to disclose directly or indirectly information he knew to be unlawfully obtained information.

371. Plaintiff is aware that law enforcement frequently gets SWECA protected information at the same time as Wiretap information so it is reasonable to believe that if Defendants have access to Wiretap data that they also have access to SWECA data and a prudent person would so inquire. A prudent person would also suspect SWECA information was obtained because SWECA allows voluntary disclosure upon claim of a Wiretap warrant.

372. Plaintiff notes that the Rule FRCP 26(a)(1)(A) conference where the information was revealed came to nothing productive for Plaintiff. Defendant's attorney promised to write up the discussions and submit the various disagreements to the court for decision. Needless to say such promise went unfulfilled presumably resulting in the Defendants getting more favorable terms from the court than they might have if the disagreements had been submitted as promised.

373. Plaintiff notes that he had presented a request for the production of documents to Plaintiffs attorney's prior to the opening of discovery as a courtesy to enable them to begin prior to the formal request.

374. Plaintiff notes that he received a response denying discovery in a short paragraph which alleged that the document requests were limited by the interrogatory limit.

375. Plaintiff wrote back that he felt the objections must be particularized.

376. On June 28th, 2013 Defendant's attorney again responded denying discovery in a short paragraph which alleged that the document requests were limited by the interrogatory limit.

377. Plaintiff then conducted research from a computer at his house using the internet and identified several cases which are on point to the issue that document requests are not interrogatories and are not counted against the interrogatory limit.

378. On July 3rd, 2013, some days after Plaintiff identified the cases online, Defendant's attorney mailed another objection to the document production request dropping the claim of interrogatory limits and copying boilerplate language into the production request claiming that the request is not directly related to Defendant's perception of the issues remaining in the pleadings.

379. Plaintiff alleges that the Defendants learned of Defendants research using Wiretaps and/or SWECA procedures. Plaintiff alleges that sequence of switching strategies once the Wiretap of Plaintiff identified cases on point to rebut Defendant's strategy, circumstantially indicates unlawful receipt and use of wiretap or SWECA product. Specifically it circumstantially indicates interception of the browsing screens or receipt

and unlawful use the Wiretap or SWECA information including the search engine or other browsing logs.

380. Plaintiff alleges that unlawful Wiretap, SWECA and Computer Fraud violations are inherently intentional, unreasonable and highly offensive to a reasonable person.

## COMPUTER FRAUD AND ABUSE

381. Plaintiff alleges violations of 18 USC 1030 – Fraud and Related Activity in Connection with Computers.

382. Plaintiff alleges that he has been damaged by acts prohibited by 18 USC 1030. including acts prohibited under 1030(a)(2), (4).

383. It is well established law that a civil recovery action exists for violations of 18 USC 1030. See 18 USC 1030(g).

384. Plaintiff alleges that he has been damaged in an amount greater than $5,000 per year in 2009 and other years and that such damage was, in part, facilitated by violations of 18 USC 1030.

385. Plaintiff is unaware of any commercial or government information system which does not prohibit use of the information system for tortuous or criminal acts.

386. Plaintiff alleges that the Defendants have by their actions and inactions overseen and allowed access to various law enforcement information systems for the purposes of planning tortuous and criminal acts and sought information to settle civil claims and that each is a violation of the terms of use and access rights of said information systems.

387. Plaintiff alleges that the Defendants have by their actions and inactions overseen and allowed access to various commercial information systems for the purposes of planning tortuous and criminal acts and have therefore exceeded the terms of use and access rights of said information systems.

388. Plaintiff received inquiry notice related to unlawful information systems access coincident to the wiretapping inquiry notice as it is a reasonable assumption that a prudent individual confronted with an abuse of wiretaps would suspect the same conspirators of abuse of information systems.

## INVASION OF PERSONAL PRIVACY

389. Plaintiffs alleges that unlawful Wiretap, SWECA and Computer Fraud violations are inherently intentional, unreasonable and highly offensive to a reasonable person.

390. Plaintiff alleges that unlawful Wiretap, SWECA and Computer Fraud violations are an unreasonable and highly offensive intrusion on the privacy and seclusion of the Plaintiff.

391. Plaintiff notes invasion of privacy torts as set forth in the Second Restatement including 652B and 652E.

## CONSPIRACY

392. Plaintiff alleges the existence of a conspiracy to reward and corruptly influence various supporters of the City administration including supporters who are members of City boards.

393. Plaintiff alleges that the consideration to reward and corruptly influence the supporters of the City administration is obtained from third parties by conversion, theft, nuisance, tortuous interference with their businesses and other means under color of law.

394. Plaintiff alleges that City officials and employees used unlawful methods to damage the businesses and property of the prospective victims by attaching encumbrances to properties using the code enforcement and other process. The intention of the conspirators being that said properties would then be purchased at below market prices by the person to be rewarded or influenced. Once the person to be rewarded or corruptly influenced owned the property the City would negotiate a settlement with the new buyer releasing the encumbrances under much less onerous terms than were demanded from the original owner.

395. Plaintiff alleges that the conversion of his property by the conspirators including conversion of the lift was an attempt to further the conspiracy in two regards. The property itself could be given or sold below market to a person that it was desired to reward or corruptly influence. The act of obtaining the property was also intended to intimidate Plaintiff and others who might attempt to resist the conspiracy.

396. Plaintiff alleges that various acts of the conspirators, including the named criminal acts, nuisance, trespass, fraudulent misrepresentation, theft, conversion and invasion of privacy were intended to drive him from the rental business, deplete his resources and to damage his businesses and encumber his properties in a manner that would encourage him to quit exercising his first amendment rights to oppose the City.

397. Plaintiff alleges that various acts of the conspirators, including the named criminal acts, nuisance, trespass, fraudulent misrepresentation, theft, conversion and invasion of privacy were intended to drive him from the rental business, deplete his resources and to encumber his properties in a manner that would encourage him to sell the properties at significantly below market value.

Civil Rights Complaint

398. Plaintiff alleges that Plaintiff's success obtaining court orders putting the City on notice that their search and seizure process was unlawful was endangering the conspiracy to reward and corruptly influence by depriving the conspirators of deniability regarding the unlawful search and seizures.

399. Plaintiff alleges that Plaintiff's success arguing constitutional claims before the courts was putting the City on notice that their administrative appeals process was unlawful, and was thereby endangering the conspiracy to reward and corruptly influence by depriving the conspirators of deniability regarding the unlawful administrative appeals process.

400. Plaintiff alleges that Rodney Fitt's complaints before the City council regarding the unlawful fire inspections and other illegal entries exemplifies the actions of the conspirators. Plaintiff alleges that the conspirators used their lawful access to commercial databases for the unlawful purpose of furthering and concealing the conspiracy under color of law.

401. Plaintiff alleges that the conspirators used their lawful access to law enforcement databases for the unlawful purpose of furthering and concealing the conspiracy under color of law.

402. Plaintiff alleges that the conspirators used their law enforcement powers to monitor the conversations, emails, searches and browsing of potential opponents of the administration including targets of the conspirators.

403. Plaintiff alleges that several of his and his mother's properties were unlawfully entered by parties unknown since this action was filed. Doors have been broken open. Doors have been apparently opened with no apparent violence and left open inviting other unlawful entry. Storm windows have been pried off. Plaintiff alleges increased unsolved break-ins is part of the pattern and practice employed by the conspirators.

404. Plaintiff alleges that the doors were left open, for among other reasons, to give a code enforcement official an excuse to unlawfully enter the building as has been documented by other property owners.

405. Plaintiff notes that he has suffered hundreds of dollars of direct vandalism of his properties since filing this action. More vandalism in dollar terms than suffered in aggregate in the remainder of his life. Plaintiff alleges that the Defendants have unlawfully used their law enforcement powers to retaliate by arranging and not resolving otherwise easy to resolve vandalisms. Plaintiff alleges increased unsolved vandalism is part of the pattern and practice employed by the conspirators such as in the Zip feed mill matter.

## THE LIABILITY OF MAYOR MUNSON

406. That for all the reasons cited herein that Mayor Munson was on notice that various City employees were engaged in violative conduct in support of his policies of getting tough on landlords and code enforcement.

407. That the failure of Mayor Munson to investigate and prevent violative conduct he did or should have known about was intentional, grossly negligent and shocks the conscience.

408. That the failure of Mayor Munson to investigate and prevent violative conduct he did or should have known about reasonably infers willful blindness and deliberate ignorance.

409. That the failure of the Mayor to review and act on Notice of Harm filings sent to the City which named his subordinates or persons such as Assistant City Attorneys acting in his name was intentional, grossly negligent and shocks the conscience.

410. That the failure of the Mayor to review and act on allegations of criminal acts by parties in support of his policies of getting tough on landlords and code enforcement was intentional, grossly negligent and shocks the conscience.

411. That the failure of the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities to act in the face of constitutional deprivations, torts and other violations of law herein described caused the deprivations that have been suffered by the Plaintiff.

412. That the failure of the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities to act in the face of transgressions about which they knew or should have known establishes a policy or custom that the City of Sioux Falls will condone or otherwise tolerate constitutionally violative conduct in general and in specific the constitutionally violative conduct outlined in this Complaint.

413. That had the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities affirmatively acted to properly select, or to properly train or to properly supervise or to properly discipline the employees mentioned herein when said employees conducted themselves in constitutionally violative ways, the constitutional deprivations of the Plaintiff would not have occurred.

414. That according to testimony and finding of fact number 83 in the _Daily_ matter the Mayor delegated his authority to choose the hearing officer to the City Attorney and abdicated his responsibility per the Ordinance. The Mayor's delegation of his obligation to choose the administrative appeals hearing officer calls into question whether the panel

was validly convened and had any jurisdiction at all. The Mayor's delegation of his obligation to choose the hearing officer was material to the relative disinterestedness of the hearing officer and was concealed from the Plaintiff and presumably others.

415. That by their failures as described herein, the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities intentionally disregarded known facts or alternatively were deliberately indifferent to a risk of constitutional violation of which they knew or should have known and that their culpability caused the constitutional violations to the Plaintiff.

416. That it is not credible to believe that the Mayor did not know the administrative appeals process was constitutionally violative when the Mayor knew that the hearing officer was chosen by the City Attorney not by himself as required by the Ordinance, that the hearing officer was advised during the hearing on matters of law by the City Attorney and that the City ordinance reversed the ordinary burden of proof and required the accused to prove themselves innocent.

417. That Mayor Munson negligently failed to control Tornow, Barthel, Kneip, Coooper, Goldammer, Ford, Bell, Gamber, Nicolai, Hartmann and others acting under his supervision and at his pleasure. That the violative acts could not have been committed had Tornow, Barthel, Kneip and the other violative actors not been in the employment of the City of Sioux Falls, or would have been remedied sooner had Tornow, Kneip and the other violative actors been charged and prosecuted for their known violative acts, or had they been required to validly account for their use of the resources of the City of Sioux Falls, or had they been restrained from using their color of law powers in violative manners. That had the Mayor not pursued a policy of allowing his subordinates to break the law to enforce the law through his "getting tough on code enforcement" policies the violative conduct would not have occurred. That given the history of violative acts committed by the violative actors and the Mayor's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that third parties would be injured if discipline and control to stop the violative behavior was not exercised. That Mayor Munson's failure to act to control the violative behavior of which he knew or should have known enabled the acts which damaged Plaintiff. That had Mayor Munson acted to control the violative actors Plaintiff would not have been damaged.

418. That Mayor Munson negligently failed to supervise Tornow, Barthel, Kneip, Cooper, Goldammer, Ford, Bell, Gamber, Nicolai, Hartmann and others acting under his supervision and at his pleasure. That given the history of violative acts committed by the violative actors and the Mayor's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that his failure to use ordinary care

in supervising the violative actors and their supervisors some of which were direct subordinates to the Mayor would result in harm to third parties.

419. That Mayor Munson is liable as a principal in the theft or conversion of the construction equipment. Said liability the result of the theft being a foreseeable result of conduct he desired and requested. Said liability out of his negligent and reckless supervision of parties under his control, including those parties directly involved and those parties charged with notifying him of the malfeasance of employees and disciplining such employees. Said liability because he failed to act to return the stolen property after he either knew of the theft or after he failed to investigate and pursued a policy of willful blindness to avoid learning of the theft and other violative conduct.

420. That Mayor Munson, Mayor Heuther, Chief Barthel and City Attorney Tornow are liable as principals in the defamation of Mr. Stormo and his business and that the other Defendants are liable as conspirators.  Said liability for the principals the result of the trespass being a foreseeable result of conduct they desired and requested. Said liability resulting from their negligent and reckless supervision of parties under their control including those directly involved and those parties charged with evaluating the constitutionality of City policies and those parties charged with notifying him of the malfeasance of employees and disciplining such employees. Said liability for the conspirators the result of the trespass being a foreseeable result of conduct they knew or should have known was illegal and could have refused to participate in.

421. That Mayor Munson, Mayor Heuther and City Attorney Tornow are liable as principals in the defamation of Mr. Stormo and his business and that the other Defendants are liable as conspirators. That City employees, officers and agents made malicious public statements labeling persons who refused to acknowledge the legality of the City's administrative law proceedings as deadbeats, scofflaws and other derogatory labels. That the City also published the names of said protesters whose protests were based on sound legal reasoning not on an inability to pay. The defamation was per se and malicious as it was intended to hold such persons out to ridicule, make it more difficult to get credit and make it more difficult to rent their properties. The legal position of persons labeled deadbeats and scofflaws that the process was unconstitutional and without basis in law was ultimately upheld by the South Dakota Supreme Court over the opinions of the City's attorneys in Daily v Sioux Falls.

422. That Mayor Munson, Mayor Heuther and City Attorney Tornow are liable as principals in the malicious prosecution of Mr. Stormo and his business and that the other Defendants are liable as conspirators. That proceedings were initiated for purposes other than accomplishing justice such as enforcing an unlawful policy, retaliation and cover charges ; that the proceedings terminated in favor of Mr. Stormo and that Mr. Stormo was damaged by being depleted of resources as the result of the malicious prosecutions.

Civil Rights Complaint                                                    Page 53 of 71

423. That Mayor Munson, Mayor Heuther and City Attorney Tornow are liable as principals in the intentional infliction of emotional distress on Mr. Stormo and that the other Defendants are liable as conspirators. That the Defendants engaged in extreme and outrageous conduct including repeated malicious prosecutions, theft of the construction equipment and refusal to return the stolen property. That the Defendants intended to cause the plaintiff severe emotional distress and that they acted recklessly and negligently causing the plaintiff severe emotional distress. That the Defendants conduct, in fact, caused plaintiff to suffer severe emotional distress including physical manifestations of stress related illness. That Mr. Stormo suffered an extreme disabling emotional response to the Defendant's conduct.

424. THE LIABILITY OF MAYOR HUETHER

425. That for all the reasons cited herein that Mayor Huether was on notice that various City employees were engaged in violative conduct in support of his policies of getting tough on landlords and code enforcement.

426. That after the Circuit Court ruled on *Daily* Mayor Huether abstained from directing his subordinates to stop all violative conduct involving code enforcement and the Administrative Appeals Process and as a consequence violative conduct continued.

427. That after the South Dakota Supreme Court ruled on *Daily* Mayor Huether abstained from directing his subordinates to stop all violative conduct involving code enforcement and the Administrative Appeals Process and as a consequence violative conduct continued.

428. That once the code enforcement and Administrative Appeals Process was declared unconstitutional Huether failed to conduct a reasonable inquiry into or effectively discipline those who had directed others to commit violative conduct or had committed violative conduct themselves or had been damaged by the violative conduct. Nor did he attempt to reasonably mitigate damages against those harmed.

429. That once the code enforcement and Administrative Appeals Process was declared unconstitutional Huether failed to prevent the use of unconstitutionally collected information or the violative determinations in ongoing procedures.

430. That Huether authorized actions which had the reasonably foreseeable consequence of destroying evidence regarding the constitutionally violative behavior described herein.

431. That such destruction of evidence violated Plaintiff's federal rights under color of law and prevented his assertion of rights in ongoing matters before the Circuit Court.

432. That having reported violative conduct to federal law enforcement and having notified the City of the reports, Plaintiff had a reasonable expectation that evidence related to said conduct would be preserved pursuant to 18 USC 1512.

433. That Mayor Huether acted with intention, was grossly negligent and shocked the conscience by his failure to investigate and prevent conduct he did or should have known about.

434. That Huether failed to require the maintenance of adequate documentation regarding anonymous reports and thereby encouraged the collection and dissemination of information resulting from violative inspections and other violative practices.

435. That Huether failed to require the maintenance of adequate documentation regarding the development of probable cause and thereby validating and authorizing the practice of reporting unlawfully obtained information as anonymous tips.

436. That Huether by failing to maintain adequate documentation with regard to the determination of probable cause and thereby validating and authorizing the practice of concealing malicious intent on the part of City employees as an anonymous tips.

437. That by requesting judgments from the courts which allow for the redistribution of the valuable personal and commercial property seized by the City at the personal discretion of City employees to themselves and others.

438. By allowing the distribution of seized property at the personal discretion of City employees to themselves and others.

439. That the Mayor allowed City employees and others to make public and media statements regarding various City ordinances that he knew or should have know were false and that said failure to prevent such statements contributed to the constitutionally violative behavior.

440. That said failure to control public and media statements could also be reasonably foreseen as deceiving persons as to whether their federal rights were violated and thereby delay the reporting of a potential crime to federal law enforcement.

441. That as Mayor of the City of Sioux Falls he as Mayor, or others authorized on his behalf, certified compliance with federal state and local law as a condition of receiving various federal grants. These repeated certifications have created a reasonable expectation that the City of Sioux Falls would abide by federal, state and local law. These repeated certifications have created a compliance obligation against the City of Sioux Falls.

Civil Rights Complaint                                              Page 55 of 71

442. That Huether abrogated his responsibilities to ensure compliance with federal, state and local law and thereby contributed to the violative behavior described herein.

443. That Mayor Huether negligently failed to control Tornow, Barthel, Kneip, Coooper, Goldammer, Ford, Bell, Gamber, Nicolai, Hartmann and others acting under his supervision and at his pleasure. That the violative acts could not have been committed had Tornow, Barthel, Kneip and the other violative actors not been in the employment of the City of Sioux Falls, or would have been remedied sooner had Tornow, Kneip and the other violative actors been charged and prosecuted for their known violative acts, or had they been required to validly account for their use of the resources of the City of Sioux Falls, or had they been restrained from using their color of law powers in violative manners. That had the Mayor not pursued a policy of allowing his subordinates to break the law to enforce the law through his "getting tough on code enforcement" policies the violative conduct would not have occurred. That given the history of violative acts committed by the violative actors and the Mayor's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that third parties would be injured if discipline and control to stop the violative behavior was not exercised. That Mayor Huether's failure to act to control the violative behavior of which he knew or should have known enabled continuation of the acts which damaged Plaintiff. That had Mayor Huether acted to control the violative actors Plaintiff damages would not have been as severe.

444. That Mayor Huether negligently failed to supervise Tornow, Barthel, Kneip, Cooper, Goldammer, Ford, Bell, Gamber, Nicolai, Hartmann and others acting under his supervision and at his pleasure. That given the history of violative acts committed by the violative actors, documented by the State Supreme Court and the Mayor's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that his failure use ordinary care in supervising the violative actors would result in harm to third parties.

445. That in addition to the specific instances listed in this section Mayor Heuther is also liable for his behavior documented elsewhere in this complaint.

## THE LIABILITY OF THE CHIEF OF POLICE

446. That the Chief of Police, Doug Barthel, is vested with the authority to train, supervise, discipline, and otherwise control the officers of the City of Sioux Falls.

447. That the Chief has effectively abrogated the power to supervise, discipline and control the officers of the City of Sioux Falls Police Department by failing to act in the face of numerous transgressions of which he knew or should have known. As the lawfully designated policy maker for the City of Sioux Falls Police Department he had the power

and responsibility to prevent the existence of policies and customs described herein and has failed and refused to do so. The failure of the Chief to act in the face of constitutionally violative conduct as described herein caused the constitutional deprivations suffered by the Plaintiff.

448. That the Chief of Police was aware or should have been aware of the various violative acts being committed by City employees in the name of code enforcement, health enforcement, building code enforcement, plumbing enforcement, electrical enforcement, mechanical enforcement and the various other types of enforcement initiated by the City of Sioux Falls but originating outside the police department, including the administrative appeals process. The failure of the the Chief to act in the face of the constitutionally violative conduct described herein caused the constitutional deprivations suffered by the Plaintiff.

449. That the Chief of Police intentionally disregarded known facts or was deliberately indifferent to and stood by and did not intervene to stop violations of federal rights of which he knew or should have known and his culpability caused the constitutional violations suffered by the Plaintiff.

450. The Chief of Police was aware or should have been aware of the support members of the Police department were providing to other City employees under of color of law which had the effect of furthering and concealing the violative acts described herein. Such support included collection of evidence to enable cover charges to be prosecuted against people who objected to the trespassing of city inspectors. Such support included "show of armed force" presence for unconstitutional trespassing in support of inspections.

451. That the Chief of Police, is the commander in chief of the police department and is the highest ranking police officer in the department. He is delegated the power and authority to control the conduct of the officer of the City of Sioux Falls police department and has failed and refused to properly train, to control, to discipline, and to otherwise control the conduct of the officers of the City of Sioux falls Police Department.

452. That the Chief of Police was responsible for but failed to establish a reasonable and effective policy for investigating wrongdoing in the City Attorney's office.

453. That the Chief of Police was responsible for but failed to establish a reasonable and effective policy for investigating wrongdoing among City employees and elected City officials in general.

454. That there were no exigent or urgent circumstances preventing a thorough or proper investigation in these matters.

Civil Rights Complaint                                         Page 57 of 71

455. That the Chief of Police was a bystanding officers who refused to intervene as other law enforcement personnel deprived Plaintiff and numerous others of their rights and property.

456. That the Chief of Police was responsible for ensuring that the training City of Sioux Falls police officers was adequate.

457. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate that an officer did not know that it was a violation of the law to either create or file a false affidavit before the court.

458. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate that an officer did not know that it was a violation of the law to attempt to corruptly persuade a victim that no violation of federal rights had occurred when in fact more than one had occurred.

459. That it is intentional, grossly negligent and shocks the conscience that the City of Sioux Falls police department training was so inadequate that an officer did not know that other law enforcement officers, City officials, employees or agents and celebrities were not entitled to special deference when committing criminal acts.

460. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate in the matter of making credibility determinations that an officer accepted the verbal denials of the alleged perpetrator against the perpetrator's own uncontroverted sworn affidavit and the word of the victim's spouse.

461. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate that an officer closed a fraud investigation without obtaining or examining the written documents central to the allegations or without getting a neutral expert opinion on same.

462. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate that an officer closed a fraud investigation without seeking or obtaining an opinion to the law at issue from an expert and neutral party.

463. That it is intentional, grossly negligent and shocks the conscience that the Sioux Falls police department training was so inadequate that an officer believed that once a reasonable investigator should have suspected a fellow law enforcement officer was involved in a crime that he could resolve the situation by willful blindness or deliberate ignorance and failure to investigate.

Civil Rights Complaint                                    Page 58 of 71

464. That the City of Sioux Falls Chief of Police was intentional, grossly negligent and shocked the conscience by failing to conduct a reasonable investigation into the claims outlined on website www.siouxfallsclassaction.com and in various news dispensers of multiple violations of law by code enforcement personnel, various inspectors and the City Attorney's office.

465. That Barthel's willful blindness and deliberate ignorance furthered the conspiracy to detain Plaintiff's illegally seized property.

466. That Barthel's willful blindness and deliberate ignorance furthered the conspiracy to return the equipment only on Plaintiff's agreement to a settlement favorable to the City and various City employees.

467. That said acts violated Plaintiff's rights including the right to due process and equal protection under the law.

468. That Chief Barthel negligently failed to control Kneip and others acting under his supervision and at his pleasure. That the violative acts could not have been committed or would have been remedied sooner had Tornow, Kneip and the other violative actors been charged and prosecuted for their known violative acts, or had they been required to validly account for their use of the resources of the City of Sioux Falls, or had they been restrained from using their color of law powers in violative manners. That had the Chief not pursued a policy of allowing City employees, officer agents and others to break the law to enforce the law to support the Mayor's "getting tough on code enforcement" policies the violative conduct would not have occurred. That the violative acts would not have been committed if the Chief had directed his subordinates to treat Code Enforcement officers and other City employees, officers and agents the same as other persons and refer their violative acts for prosecution. That given the history of violative acts committed by the violative actors and the Chief's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that third parties would be injured if discipline and control to stop the violative behavior was not exercised. That Chief Barthel's failure to act to control the violative behavior of which he knew or should have known enabled the acts which damaged Plaintiff. That had Barthel acted to control the violative actors Plaintiff would not have been damaged or in the alternative the severity of his damages would have been mitigated.

469. That Chief Barthel negligently failed to supervise Kneip and others acting under his supervision and at his pleasure. That given the history of violative acts committed by the violative actors and the Chief's knowledge or opportunities to acquire knowledge of their violative conduct it was reasonably foreseeable that his failure to use ordinary care in supervising the violative actors would result in harm to third parties.

Civil Rights Complaint                                                            Page 59 of 71

470. That in addition to the specific instances listed in this section Chief Barthel is also liable for his behavior documented elsewhere in this complaint.

## THE LIABILITY OF OFFICER KNEIP

471. That Police Officer Kneip was a detective with many years of investigative experience and knew or should have known that Tornow's acts in filing the false affidavit and acting on the subsequent default judgment were unlawful.

472. That there were no exigent or urgent circumstances preventing a thorough or proper investigation in these matters.

473. That Police Officer Kneip acted intentionally with gross negligence and shocked the conscience when he did not seek to obtain or review a copy of the alleged false affidavit or court file or any of other written evidence prior to making his decision.

474. That Police Officer Kneip acted intentionally with gross negligence and shocked the conscience when he did not seek a legal opinion from a neutral expert prior to making his decision.

475. That Police Officer Kneip acted intentionally with gross negligence and shocked the conscience when he made the unreasonable credibility decision to accept the alleged perpetrator's verbal denials as more credible than the uncontroverted written affidavits in the perpetrator's own hand combined with the other court filings and the word of the Plaintiff's spouse.

476. That Police Officer Kneip acted intentionally with grossly negligence and shocked the conscience when he chose to pursue a policy of willful blindness and deliberate ignorance and refused to investigate the credible report of the theft by deception of Plaintiff's property.

477. That Police Officer Kneip acted intentionally with gross negligence and shocked the conscience when he chose to pursue a policy of willful blindness and deliberate ignorance and refused to investigate Plaintiff credible report of the preparation of and filing of the false and misleading affidavit by Tornow..

478. That Police Officer Kneip acted intentionally with gross negligence and shocked the conscience when he attempted to use deception to delay and prevent Plaintiff's reports to federal law enforcement by alleging that no violations of law had occurred and that the construction equipment was seized as the result of a valid court order.

479. That Police Officer Kneip furthered the conspiracy to detain Plaintiff's illegally seized property only on Plaintiff's agreement to an unfavorable settlement.

480. That Police Officer Kneip furthered the conspiracy to create and file the false affidavit.

481. That Police Oficer Kneip was a bystanding officer who refused to intervene as other law enforcement personnel deprived Plaintiff of his rights and property.

482. That in the matter of the conduct of the assigned investigation into Plaintiff's report of stolen construction equipment Kneip was empowered to act as a policy maker for the City of Sioux Falls.

483. That Police Officer Kneip's willful blindness and deliberate ignorance furthered the conspiracy to detain Plaintiff's illegally seized property.

484. That Police Officer Kneip's willful blindness and deliberate ignorance furthered the conspiracy to return the equipment only on Plaintiff's agreement to a settlement favorable to the City and various City employees.

485. That it is intentional, grossly negligent and shocks the conscience that Kneip closed a theft investigation without obtaining or examining the written documents central to the allegations or without getting a neutral expert opinion on same.

486. That it is intentional, grossly negligent and shocks the conscience that Kneip closed a theft investigation without seeking or obtaining an opinion to the law at issue from an expert and neutral party.

487. That it is intentional, grossly negligent and shocks the conscience that Kneip believed that once a reasonable investigator should have suspected a fellow law enforcement officer, City official, employee or agent or Celebrity was involved in a crime that he could resolve the situation by willful blindness or deliberate ignorance and failure to investigate.

488. That said acts violated Plaintiff's rights including the right to due process and equal protection under the law.

489. That in addition to the specific instances listed in this section Officer Kneip is also liable for his behavior documented elsewhere in this complaint.

## THE LIABILITY OF TORNOW

Civil Rights Complaint                                                     Page 61 of  71

490. That Tornow violated Plaintiff's federal rights under color of law by preparing a false affidavit regarding a matter involving the Plaintiff with the intention of filing it before a court of the State of South Dakota.

491. That Tornow violated Plaintiff's federal rights under color of law by filing a false affidavit regarding a matter involving the Plaintiff before a court of the State of South Dakota .

492. That Tornow violated Plaintiff's federal rights under color of law by making false statements of law about matters he knew or should have known including the law related to search and seizure and that his actions had the reasonably foreseeable effect of delaying Plaintiff's report to federal law enforcement in violation of 18 USC 1512.

493. That Tornow violated Plaintiff's federal rights under color of law by conspiring to and employing deception based on opening mail addressed to the Administrative Appeals Board. That these actions denied Plaintiff due process rights in the matter before the small claims court and denied Plaintiff his rights to have his mail opened only by the addressee in violation of 18 USC 1702.

494. That Tornow violated Plaintiff's federal rights under color of law by conspiring to and employing deception regarding whether or not the Default Judgment had force of law when seizing Plaintiff's construction equipment and that his actions had the reasonably foreseeable effect of delaying Plaintiff's report to federal law enforcement in violation of 18 USC 1512.

495. That Tornow violated Plaintiff's federal rights under color of law by conspiring to and effectuating actions which had the foreseeable result of retaliating for Plaintiff's known report to federal law enforcement and in violation of 18 USC 1513.

496. That Tornow made official statements under color of law, regarding the law of search and seizure, that he knew or should have know were false and that said statements had the reasonably foreseeable effect of encouraging others to violate Plaintiff's federal rights.

497. That Tornow fraudulently used color of law to deplete the resources Plaintiff had to carry on his business in interstate commerce.

498. That Tornow used color of law to attempt to discourage Plaintiff from asserting federal rights by prosecuting cover charges against Plaintiff.

499. That Tornow used color of law to attempt to discourage Plaintiff from asserting federal rights by conspiring with others to develop and prosecute cover charges against Plaintiff.

Civil Rights Complaint                                                    Page 62 of  71

500. That Tornow has stated in the presence of the Plaintiff that the City is empowered by Ordinance to search and inspect properties without a warrant.

501. That Tornow has stated in the presence of the Plaintiff that because the City of Sioux Falls is a home rule charter city prior court precedence, including US Supreme Court, 8th Circuit Court of Appeals and South Dakota Supreme Court precedence on warrant requirements does not apply. That these acts had the foreseeable result of violating Plaintiff's rights under the Supremacy Clause to the US constitution.

502. That Tornow has stated in the presence of the Plaintiff that even if prior court precedence did prohibit searches and inspections without a warrant the City can enforce its ordinance until the South Dakota Supreme Court tells it otherwise since ordinances have a presumption of validity.

503. That Tornow concealed material facts from Plaintiff which were relevant to the jurisdiction and impartiality of the Administrative Appeals Hearing Panel. That according to testimony and finding of fact number 83 in the *Daily* matter the Mayor delegated his authority to choose the hearing officer to the City Attorney and abdicated his responsibility per the Ordinance.

504. That the Mayor's delegation of his obligation to choose the administrative appeals hearing officer calls into question whether the panel was validly convened and had any jurisdiction at all. The Mayor's delegation of his obligation to choose the hearing officer was material to the relative disinterestedness of the hearing officer and was concealed from the Plaintiff and presumably others.

505. That in addition to the specific instances listed in this section Tornow is also liable for his behavior documented elsewhere in this complaint.

## THE LIABILITY OF THE CITY OF SIOUX FALLS

506. The Plaintiff Eric Stormo alleges that for the reasons cited herein that the City of Sioux Falls is liable to the Plaintiff for compensatory damages and attorney's fees.

507. That it is well established law that municipalities have strict liability for the actions of attorneys acting under color of law or on their behalf.

508. That Tornow in his role as Assistant City Attorney for the City of Sioux Falls acted at all times relevant to this complaint as a policy maker for the City.

509. That Nicolai has stated that he has been instructed by his supervisor that it is the official opinion of the office of the City Attorney for the City of Sioux Falls that Sioux

Falls ordinances grant the authority to conduct searches and inspections of locations not in public view without permission of the property owner and without obtaining a warrant.

510. That Tornow has stated in the presence of the Plaintiff that the City is empowered by Ordinance to search and inspect properties without a warrant.

511. That Tornow has stated in the presence of the Plaintiff that because the City of Sioux Falls is a home rule charter city prior court precedence, including US Supreme Court, 8th Circuit Court of Appeals and South Dakota Supreme Court precedence on warrant requirements does not apply.

512. That Tornow has stated in the presence of the Plaintiff and when acting on behalf of the City of Sioux Falls that even if prior court precedence did prohibit searches and inspections without a warrant, the City can enforce its ordinance until the South Dakota Supreme Court tells it otherwise since ordinances have a presumption of validity.

513. That Police Officer Kneip refused to investigate the credible report of the theft by deception of Plaintiff's construction equipment.

514. That Police Officer Kneip furthered the conspiracy to detain Plaintiff's illegally seized property only on Plaintiff's agreement to an unfavorable settlement.

515. That Police Officer Kneip refused to investigate the allegations of creating and filing a false affidavit reported by Plaintiff's wife.

516. That Police Officer Kneip furthered the conspiracy to create and file the false affidavit.

517. That Police Officer Kneip conspired to use deception to delay and prevent Plaintiff's reports to federal law enforcement.

518. That the Mayors, members of the City Attorney's office, Barthel and Police Officer Kneip were bystanding officials with the power to prevent the violative conduct but who refused to intervene as other law enforcement personnel deprived Plaintiff of his rights and property.

519. That despite all of the violative conduct described herein, and the violative conduct described in the various Notice's of Harm, Tornow has claimed in various forums that during his career with the City he was never the subject of disciplinary action.

520. That the City of Sioux Falls has promised to pay all compensatory and punitive damages which may be incurred by its inspectors regardless of whether the act was lawful or unlawful. This promise to reimburse employees for illegal, wanton and

malicious acts has created and encouraged the custom of violation of constitutional guaranties and federal law as offenders feel that no matter how frequently or badly they violate the law, they will be immunized from any financial or career penalty.

521. That the City of Sioux Falls has by its failure to effectively discipline violators of constitutional rights ratified the conduct and created a custom that it is acceptable to violate constitutional rights.

522. That the City of Sioux Falls has by its failure to effectively require City employees to report other employees violating constitutional rights has ratified the conduct and created a custom that it is acceptable to violate constitutional rights.

523. That the City of Sioux Falls has by its failure to effectively investigate and refer for investigation and prosecution its employees and agents who violated local, state and federal laws it has ratified the conduct and created a custom that it is acceptable for employees of the City of Sioux Falls to violate the law under color of law.

524. That among the policies, customs, practices and usages which exist are:

- To enter the curtilage of properties without a warrant for the purposes of inspections or searches
- To enter non-public areas of the interior of structures without a warrant for the purposes of inspections or searches
- To take photographs of the interior of non-public areas of structures without a warrant for the purposes of inspections or searches
- To enter other, generally adjoining, properties without a warrant to view or inspect portions of the target curtilage which are not in public view
- To encourage persons not employed by or agents of the City to violate the law to collect evidence of alleged violations for use by the City
- To fail to prosecute persons for trespass when trespass was used to collect evidence for use by the City thereby encouraging violative behavior
- To issue cover charges in encounters with persons whose rights have been violated and who complain about violations of the type enumerated herein
- To issue cover charges in encounters with persons who have witnessed the violation of rights
- To issue cover charges in encounters by persons who complain about said violations
- To attempt to intimidate and threaten persons who complain of or witness wrongdoing
- To use and abuse the judicial process to threaten to prosecute who complain of acts committed by employees of the City
- To use and abuse the judicial process to prosecute witnesses against employees of

Civil Rights Complaint                                                    Page 65 of 71

the City
- To conspire with others in the prosecution of said cover charges
- To act individually or to conspire with others to prevent the truth about the transgressions of other employees from being known
- Failing to prevent inspectors and other employees from intentionally or negligently damaging property during enforcement actions
- Failing to meaningfully prohibit lying to prevent the truth about the transgressions of other employees from being known
- Failing to report said transgressions to prevent the truth about the transgressions of other employees from being known
- Failing to require as a condition of employment that employees report transgressions of other employees
- Failing to meaningfully discipline employees who are aware of transgressions of other employees and fail to report them
- To suppress political dissent by inspecting and or searching the property of persons exercising their first amendment rights and who comment adverse to the position taken by the City
- To suppress political dissent by issuing citations against persons exercising their first amendment rights and who comment adverse to the position taken by the City
- To suppress political dissent by inspecting and or searching the property of persons who support positions adverse to the City through attendance at public events, political contributions or other lawful forums
- Failing to maintain adequate documentation regarding anonymous reports and thereby encouraging the collection and dissemination of information resulting from unlawful inspections and other unlawful practices
- Failing to maintain adequate documentation regarding the development of probable cause and thereby validating and authorizing the practice of reporting unlawfully obtained information as anonymous tips
- Failing to maintain adequate documentation with regard to the determination of probable cause and thereby validating and authorizing the practice of concealing malicious intent on the part of City employees as an anonymous tips
- Allowing judgments to be requested from the courts which allow for the redistribution of the valuable personal and commercial property seized by the City at the personal discretion of City employees to themselves and others
- Allowing the distribution of seized property at the personal discretion of City employees to themselves and others
- That the City did not prohibit employees from benefiting personally or tipping others to benefit from enforcement actions

525. That the Mayors of the City of Sioux Falls and other subordinates to the Mayors with supervisory responsibilities are vested with the authority to select, train, supervise, discipline, and otherwise control the employees of the City of Sioux Falls.

526. That the Chief of Police, Doug Barthel, is vested with the authority to train, supervise, discipline, and otherwise control the officers of the City of Sioux Falls.

527. That the Chief of Police has effectively abrogated the power to supervise, discipline and control the officers of the City of Sioux Falls Police Department by failing to act in the face of numerous transgressions of which he knew or should have known. As the lawfully designated policy maker for the City of Sioux Falls Police Department, Barthel had the power and responsibility to prevent the existence of policies and customs described herein and has failed and refused to do so. The failure of the Chief to act in the face of constitutionally violative conduct as described herein caused the constitutional deprivations suffered by the Plaintiff.

528. That the Chief of Police was aware or should have been aware of the various violative acts being committed by City employees in the name of Code Enforcement, Health Enforcement, Building code Enforcement, Plumbing Enforcement, Electrical Enforcement, Mechanical Enforcement and the various other types of enforcement initiated by the City of Sioux Falls but originating outside the police department including the administrative appeals process. The failure of the the Chief to act in the face of the constitutionally violative conduct described herein caused the constitutional deprivations suffered by the Plaintiff.

529. That the Chief of Police intentionally disregarded known facts or was deliberately indifferent to the risk of constitutional violation of which he knew or should have known and his culpability caused the constitutional violations suffered by the Plaintiff.

530. That the Chief of Police intentionally disregarded known facts or was deliberately indifferent to and stood by and did not intervene to stop violations of federal rights of which he knew or should have known and his culpability caused the constitutional violations suffered by the Plaintiff.

531. The Chief of Police was aware or should have been aware of the support members of the Police department were providing to other City employees under of color of law which had the effect of furthering and concealing the violative acts described herein.

532. That the Chief of Police, is the commander in chief of the police department and is the highest ranking police officer in the department. He is delegated the power and authority to control the conduct of the officer of the City of Sioux Falls police department and has failed and refused to properly train, to control, to discipline, and to otherwise control the conduct of the officers of the City of Sioux falls Police Department.

533. That the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities have effectively abrogated the power to select, train, supervise, discipline and control the employees of the City of Sioux Falls by failing to act in the face of numerous transgressions of which the City was notified about, knew or should have known.

534. That on multiple occasions the Plaintiff Eric Stormo filed a Notice of Harm with the City and thereby placed the City on official notice of the constitutional and other violations.

535. That the failure of the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities to act in the face of constitutional deprivations, torts and other violations of law herein described caused the deprivations that have been suffered by the Plaintiff.

536. That the failure of the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities to act in the face of transgressions about which they knew or should have known establishes a policy or custom that the City of Sioux Falls will condone or otherwise tolerate constitutionally violative conduct in general and in specific the constitutionally violative conduct outlined in this Complaint.

537. That had the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities affirmatively acted to properly select, or to properly train or to properly supervise or to properly discipline the employees mentioned herein when said employees conducted themselves in constitutionally violative ways, the constitutional deprivations of the Plaintiff would not have occurred.

538. That by their failures as described herein, the Mayor of the City of Sioux Falls and other subordinates to the Mayor with supervisory responsibilities intentionally disregarded known facts or alternatively were deliberately indifferent to a risk of constitutional violation of which they knew or should have known and that their culpability caused the constitutional violations to the Plaintiff.

539. That the City has obtained multiple federal grants requiring that the City certify compliance with all federal, state and local laws.

540. That the City has certified to various federal agencies on multiple occasions to be in compliance with the terms and conditions of said federal grants.

541. That certification by the City to the federal government that it was in compliance with all federal, state and local laws created a reasonable expectation that the City of Sioux Falls would abide by federal, state and local law.

542. As a direct and proximate result of the policies, customs, practices and usages which the Mayor and other executive officials allowed, promulgated, and did not prevent, the Plaintiff suffered significant injuries.

## DAMAGES

543. That the Defendant City of Sioux Falls is liable for compensatory damages and attorney's fees.

544. That the Defendants other than the City of Sioux Falls including Huether, Munson, Tornow, Barthel, Kneip and Doe are jointly and severally liable for compensatory damages, costs and attorney's fees in their official and individual capacities.

545. The acts of the Defendants as described herein were wanton, malicious and oppressive thus entitling the Plaintiff to an award of punitive damages against them in their individual capacities in amounts found to be fair and appropriate under the circumstances.

546. Plaintiff has suffered special damages in the form of Attorney's fees to defend against said prosecutions, loss of business income, damage to his reputation, damage to his livelihood, damage to his property and severe mental anguish in connection with the deprivation of his constitutional and statutory rights.

547. Wherefore, the Plaintiff prays for judgment against Defendants jointly and severally for compensatory damages in the amount of $1,000,000 plus costs of the action, attorney's fees, punitive damages as appropriate and such other relief as the Court deems fair and appropriate under the circumstances.

548. Plaintiff requests an injunction prohibiting the City from performing violative searches and from entering properties to perform inspections without a lawful warrant.

549. Plaintiff requests an order requiring the City to establish, operate and enforce a system by where City employees are required, as a condition of employment, to report transgressions of other employees to a law enforcement agency with jurisdiction in the matter.

550. Plaintiffs requests an order requiring the City to establish, operate and enforce a disciplinary system which meaningfully enforces the requirement to report transgressions of other employees.

Civil Rights Complaint                                    Page 69 of 71

551. Plaintiff request an order requiring the City to establish, operate and enforce a policy of terminating employees who commit or conspire to commit felonies using City resources.

552. Plaintiff requests an order requiring the City to report all violations of laws by its employees for which probable cause is found to appropriate law enforcement personnel not controlled by the City of Sioux Falls.

553. Plaintiff requests an order requiring the City to establish, operate and enforce a meaningful disciplinary policy prohibiting retaliation against an employee or other person who alleges a subjectively reasonable allegation that a City official or the Mayor or a City Council member or employee is violating any law.

554. Plaintiff requests an order requiring the City to have all proposed ordinance and policy changes reviewed for constitutional compliance by the City Attorney and to have said review be summarized in writing, signed by the City Attorney and available to the public.

555. Plaintiff requests an order requiring the City to remove all information collected by its unconstitutional code enforcement process or unlawful search including citations, evidence, findings of the administrative appeals board and any other information tainted by the violative processes and return said information to the cited individuals.

556. Plaintiff requests an order requiring that when any adopted code such as the zoning code, electrical code, building code, property maintenance code or other are quoted in a manner alleging a violation that the quotation include the quotations from the code as constructed and an enumerations of any and all exceptions which might apply.

557. Plaintiff requests an order requiring that when any adopted code such as the zoning code, electrical code, building code, property maintenance code or other are quoted in a manner alleging a violation that a statement is included informing the party of their right to appeal, that the law at the time of construction and use applies and that non-conforming uses may continue.

558. Plaintiff requests an order that the City may not request a condemnation order without first determining, using neutral and licensed experts, that condemnation is the only economically viable alternative.

559. Plaintiff requests an order that requires that City employees making a media or public statement involving an interpretation of law have said statement approved by the City Attorney's office prior to release.

Civil Rights Complaint                                                    Page 70 of 71

Dated this 8th of July, 2013

8 July 2013

Eric Stormo, Pro Se
2517 S Mary Knoll Drive
Sioux Falls, SD 57105-5050
(605)-335-7434