UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ERIC STORMO, | 4:12-CV-04057-KES |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO MODIFY, GRANTING IN PART AND DENYING IN PART MOTIONS TO COMPEL, AND GRANTING MOTION FOR PROTECTIVE ORDER |
| CITY OF SIOUX FALLS, R. SHAWN TORNOW, DAVE MUNSON, MIKE HUETHER, PAT KNEIP, DOUG BARTHEL, JOHN DOE, | |
| Defendants. | |

## INTRODUCTION

Plaintiff, Eric Stormo, filed this pro se lawsuit naming the City of Sioux Falls, R. Shawn Tornow, Dave Munson, Mike Huether, Pat Kneip, Doug Barthel, and John Doe as defendants. Stormo moves this court to modify its November 21, 2012 summary judgment order (Docket 120) and to compel defendants to produce or reproduce discovery (Docket 123; Docket 139; Docket 141). Defendants move for an order protecting Mayor Huether from being deposed. Docket 144. For the following reasons, Stormo's motions are denied in part and granted in part, and defendants' motion is granted.

## FACTUAL BACKGROUND

Stormo filed his original complaint in April 2012. Docket 1. He alleged that defendants violated his federal civil rights from 2005 to the present

because of his status as a landowner and landlord. *Id.* The court granted defendants' motion for summary judgment in part. Docket 27. Stormo then filed a second amended complaint with additional claims. Docket 34.

Discovery is ongoing and fraught with complications. Stormo has filed numerous motions, often raising unrelated, irrelevant, or indecipherable arguments. Defendants have neither responded to all of Stormo's discovery requests adequately nor complied with all of the court's orders sufficiently.

## DISCUSSION

### I.  Stormo's Motion to Modify the Summary Judgment Order (Docket 120) Is Denied

Stormo filed a motion presenting numerous arguments that the court should reverse its November 21, 2012 decision to grant summary judgment on certain claims. Docket 120. First, he argues that summary judgment should not have been granted based on his failure to file a Notice of Harm under SDCL 3-21-2. Docket 120 at 2. But this is not the reason the court granted summary judgment. The court granted summary judgment because most of Stormo's claims were barred by the statute of limitations. Docket 27 at 8-10.

Second, Stormo argues that his state-law claims should not have been dismissed because SDCL 15-2-15.2 only applies to federal civil rights claims. Docket 120 at 3. His claims, however, were dismissed under SDCL 15-2-14(3) and 15-2-15(1), *see* Docket 27 at 8-10, both of which apply to state-law claims.

Third, Stormo argues that the court should not have granted summary judgment because defendants did not argue that his claims were barred by the

2

statute of limitations. Docket 120 at 7. Defendants' arguments are immaterial. Stormo was required by South Dakota law to bring his claims within the period defined by the statute of limitations. He failed to do so. The claims are therefore barred. Stormo's motion to modify the summary judgment order that was entered three years ago is denied.

## II.    Stormo's Motion To Compel (Docket 123) Is Granted

Stormo moves the court to compel defendants to produce documents he requested in "Document Request 1." Docket 123 at 2. He alleges defendants have not completed requests 8, 9, 15, 21, 36, 37, 45, 46, 53, and 54. *Id.* While the court sustained objections to all of these requests, it narrowed the scope of the requests and ordered defendants to respond. Docket 60. Stormo's argument for the necessity of the information is vague and is based on claims that were dismissed when the court granted defendants' motion for summary judgment. Docket 123 at 5-6.

In response to this motion, defendants claim that they answered these requests. Docket 133. Defendants filed an affidavit from Paul M. Bengford. Docket 134. Bengford is an Assistant City Attorney for the City of Sioux Falls and claims that defendants have already "produced all known documents that are responsive to Plaintiff's production requests and that relate to the sole claims remaining in this case, all of which arise from the April 2009 seizure of Plaintiff's lift." *Id.* at 1-2. As previously discussed in this court's January 26, 2016 order, Stormo's remaining claims include more than just the 2009

3

seizure. See Docket 149. Therefore, Stormo's motion is granted. Defendants are ordered to respond to document requests 8, 9, 15, 21, 36, 37, 45, 46, 53, and 54 as they relate to the surviving claims.

### III. Stormo's Motion To Compel (Docket 139) Is Granted in Part and Denied in Part

Stormo moves this court to compel defendants to provide electronically stored information in its native format, metadata for these documents, and an index explaining information about the documents. Under Federal Rule of Civil Procedure 34(b)(2)(E), when

> producing documents or electronically stored information: (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form. . . .

### A. Native Format

Stormo moves this court to compel defendants to reproduce documents in their native format. Docket 139 at 1. He claims that he made a general request for all electronically stored information in its native format at the time of his initial document request. *Id.* at 2. He does not, however, explain what wrong with the format in which defendants have produced the documents. Therefore, the motion to compel is denied as it concerns his request to reproduce documents in their native format.

### B.    Metadata

Stormo moves this court to compel defendants to provide metadata for all documents and electrically stored information that they have produced. *Id.* at 6-7. In Document Request 3 at number 9, Stormo requested, "All Documents or meta data [sic] which log or audit trail the time and date entries were made or changed, or the data which was entered or changed, for any city controlled computer records system . . . ." Docket 139-2. Stormo argues that metadata would allow him to discover whether the data is "forensically sound," specifically: when it was created, accessed, or modified. Docket 139 at 7.

Defendants argue that providing Stormo the metadata would be overly burdensome and state that they have no system that tracks the metadata Stormo seeks. Docket 153 at 3. Therefore, in order to provide the metadata, defendants would have to go through each document and retrieve the metadata from the program with which the document was created. *Id.*

Defendants also contend that they previously objected to this request. *Id.* at 2-3; *see also* Docket 139-2. In response to Stormo's request, defendants merely stated "Overly Burdensome Request." Docket 139-2. Stormo argues that defendants did not carry their burden to show that the request was burdensome because they have done nothing more than state a boilerplate and cursory objection. *See Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684–85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing

5

or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Defendants' response may fail to articulate how this discovery is extraordinary or unusual, but Stormo has failed to show the metadata's relevancy to his claims. His motion to compel argues that he wants the metadata to be sure that the documents were not created for or altered in anticipation of litigation. Docket 139 at 7. Stormo has not explained why he thinks defendants might have done this. There is no indication that they have altered the documents. Stormo fails to convince the court that the metadata is relevant to his claims, the request falls outside of the parameters of discovery, and therefore, his motion to compel is denied as it concerns his request for metadata.

### C.    Index

Stormo moves this court to compel defendants to label and index the provided discovery pursuant to the requirements of Federal Rule of Civil Procedure 34(b)(2)(E)(i). Docket 139 at 4. He claims that defendants have not produced documents and electronically stored information "as they are kept in the usual course of business," or, in the alternative, "organize[d] and label[led] them to correspond to the categories in the request . . . ." Fed. R. Civ. P. 34(b)(2)(E)(i). He states, "In each instance, the Defendants have responded with a jumbled group of documents which is not labeled or indexed in any manner." Docket 139 at 2. He claims that removing the documents from their original

6

files made it impossible to determine the information about the custodian and source of the documents. *Id.* at 3. It is also not clear to which request each document is responsive. *Id.* at 4.

Defendants argue that they have produced documents in an organized fashion and in the form kept in the ordinary course of business. Docket 153 at 5. Beyond this assertion, defendants do not explain how they complied with Rule 34(b)(2)(E)(i).

Defendants also argue that the concerns underlying Rule 34(b)(2)(E)(i) are not implicated by Stormo's document requests. *Id.* Defendants, unlike defendants in other cases where courts found indexes necessary, produced one box (1,300 pages) of documents. *Id.* Defendants essentially argue that this case involves the number of documents that is both too few to index but too many to provide metadata. The court disagrees. Stormo's index request is reasonable and required by the rules, and the smaller amount of documents will make it easier to index.

Defendants argue that Stormo has not claimed he was prevented from "reviewing or using" the documents, and that if he found he was, he should not have waited a year to complain. *Id.* at 5-6. Stormo's motion, however, does make this claim. *See* Docket 139 at 3 (stating it is impossible to determine the information about the custodian and source of the documents). Further, Stormo's "minimum" request makes it clear that he cannot tell to which document request each document responds. *See Id.* at 4.

7

Finally, defendants argue that Rule 34 only requires "the documents be organized and labeled in order to correspond to the categories in the applicable requests for production[,]" and need not "be produced in the form Plaintiff has requested." Docket 153 at 6 n. 2. Stormo requests only "a) the bates number or other identifier of the document; b) the name of the person who is custodian of the document; c) the original source and author of the document; and d) the document request number and request number of any requests that the document is responsive to" for each document. Docket 139 at 4. Supplying this information is not overly burdensome on defendants. Therefore, Stormo's motion to compel is granted as it concerns preparation of an index that supplies the information described above.

While the court grants Stormo's motion to compel defendants to produce an index, it does not find any of Stormo's requested sanctions necessary. Discovery has already been extended pursuant to this court's order. Docket 155. All other requested forms of sanctions are inappropriate and therefore denied.

## IV.   Stormo's Third Motion to Compel (Docket 141) Is Granted in Part and Denied in Part

Stormo moves to compel defendants to provide adequate responses to interrogatories and to perform a reasonable inquiry for all discovery. Docket 141 at 1. Defendants argue that their responses are adequate and that they are not required to provide or inquire more. Docket 152 at 1-2. Stormo raises a number of objections to defendants' responses in his motion and

8

attachment. Docket 141; Docket 141-3. He makes the same objections to multiple responses, and to the extent that the holding to all similar objections are the same, the court will rule on them as a group.

As a preliminary matter, there has been confusion in this case as to what claims remain. *See* Docket 149. Stormo complains that defendants continue to respond to his discovery requests as if his only remaining claim is the 2009 confiscation of his lift. Docket 141 at 9-10. Defendants agree that in light of the court's order clarifying the remaining claims, they must review their answers to Stormo's interrogatories and supplement additional information to the extent necessary. Docket 152 at 2 n. 1. Therefore, Stormo's motion is granted as it concerns defendants' review and supplementation of their discovery production given Stormo's amended complaint.

To be clear, however, this does not mean that all of Stormo's interactions with defendants is now within the boundaries of discovery. As Stormo states, "the context of the several year disagreement between the parties" is not now discoverable. As always, discovery must be relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1).

### A.    Defendants Performed an Adequate Inquiry

Stormo moves the court to compel defendants to perform an adequate inquiry to respond to his interrogatories and other discovery requests and to provide new answers to each interrogatory. Docket 141 at 2. The crux of his argument is that none of the defendants nor everyone else present when his lift

was confiscated were interviewed. *Id.* There is no requirement in the federal rules or case law that defendants' counsel interview all defendants or all individuals who were present during the confiscation of the lift in 2009.

Stormo appears to quote the rule regulating requests for admissions by demanding that defendants perform a "reasonable inquiry." *See* Fed. R. Civ. P. 36(a)(4). He also quotes this court's discussion of rule 34, which concerns production of documents. This court explained that a party must "conduct a reasonable inquiry into the factual basis of its responses to discovery and, based on that inquiry, a party responding to the production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *McElgunn v. CUNA Mut. Grp.*, No. CIV.06-5061KES, 2008 WL 2717872, at *2 (D.S.D. July 10, 2008) (citing A. *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006)).

Stormo does not point to a provision in the rule concerning interrogatories or case law that requires that defendants interview all named defendants or all individuals who were at the site where the lift was confiscated in 2009. But, even if there were, the court finds defendants' response adequate.

Defendants replied to interrogatory 6 with a list of people they sought information from to respond to Stormo's discovery requests. Docket 141-2. This list is fairly extensive, but Stormo complains that none of the defendants are on the list. There is no requirement that defendants' counsel interview defendants.

10

Defendants claim they had no personal knowledge to help counsel respond to any of Stormo's discovery requests. Interrogatory 6 asks for people who contributed substantive information. *Id.* Therefore, if defendants were interviewed and did not have any personal knowledge of relevant matters, their names would not end up on the list.

In interrogatory 1, Stormo asks for a custodial history of his lift. Docket 141-3 at 3. He argues that defendants' response was not adequately researched because defendants did not interview people who were present on the day his lift was confiscated such as police officers or city employees who attached the lift to a truck to transport it. *Id.* This does not affect the adequacy of defendants' inquiry. Their response gives a full explanation of where the lift has been held since it was confiscated. Stormo's complaint is not that the response was inadequate but that it did not reflect the facts as he wanted them to be or believes they are. Stormo states that the reason certain people were not interviewed was "presumably . . . to conceal that someone not shown in the photographs such as the Mayor or Defendant Tornow was present." *Id.* at 3-4. His speculation does not mean that defendants' inquiry into his interrogatories was inadequate. For these reasons, Stormo's motion is denied as it concerns the adequacy of defendants' inquiry into his discovery requests.

## B. Defendants' Use of the Word "Seizure" Is Not Inappropriate

Stormo moves this court to compel defendants to use the full meaning of the word seizure, rather than only the physical meaning of the word. The result

would be that defendants' response to his interrogatories would be inadequate because "seizure" of the lift, by Stormo's definition, encompasses basically every interaction he has had with defendants. He cites the holding in *United States v. Jacobsen*, 466 U.S. 109, 113 (1984): "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Stormo believes this would include actions such as defendants taking photos of his property or making false statements about the property. Docket 141 at 11. Even if Stormo's understanding of the word seizure was correct, these actions did not interfere with his possessory interest. Therefore, his motion to compel is denied as it concerns defendants' use of the word seizure.

### C. Defendants Did Not Answer in an Obstructive Manner

Stormo moves this court to compel defendants to answer in an unobstructive manner. He argues that defendants' answered in an obstructive manner "by interjecting conclusory statements, ipse dixit, extraneous opinion, irrelevancies and other non-responsive statements in their answers to the interrogatories." Docket 141 at 12. As an example, defendants stated in one answer that the boom trailer was in disrepair. *Id*. Stormo argues that this is "not a fact observed with senses," defendants are not qualified to make the comment, and the comment was irrelevant. *Id*. The court finds neither this nor any other response is obstructive in the manner Stormo complains of here.

Therefore, Stormo's motion to compel is denied as it concerns the general obstructiveness of defendants' answers.

### D.    Defendants Did Not Answer in the "Wrong Form"

Stormo moves this court to compel defendants to answer his interrogatories in the form he requests. The basis of this argument is that Stormo believes defendants have not provided all of the material facts to respond to his interrogatories. As discussed above, the examples Stormo gives rely on his unfounded assumption that there are facts that defendants are not disclosing in order to hide their various misdeeds. The responses also do not disclose the facts as Stormo believes them to be. Defendants are not required to do more than they have done. Therefore, Stormo's motion to compel is denied as it concerns the form of defendants' responses.

### E.    Defendants' Answers Were Not Contradicted Elsewhere

Stormo moves this court to compel defendants to provide new responses because their responses to his interrogatories contradict other information they provided. The court finds that defendants' responses do not contradict each other. As an example, Stormo states, "Defendants say no one had custodial responsibility for the lift and yet in an email to Shawn Tornow the Director of Public Works Cotter (Bates 839 - See Appendix E) says he will take possession of the 'abandoned utility truck.' " Docket 141-3 at 4. Stormo provides the email. It does not, however, say that Mark Cotter "will take possession" of anything. Docket 141-6. Further, the answers are consistent with the

13

documents because the email describes the place where the City says the lift has been stored. None of the other examples shows a contradiction between defendants' answers and other documents or discovery responses. Therefore, Stormo's motion to compel is denied as it concerns defendants' allegedly contradictory responses.

### F.  Defendants' Responses Were Not Misdirection

Stormo moves this court to compel defendants to provide new responses because their answer to interrogatory 1 is "incomplete and attempts misdirection." Docket 141-3 at 4. This argument is a mixture of other arguments and minor issues. Stormo claims that the answer to interrogatory 1 is not responsive because the City of Sioux Falls as an entity cannot operate the lift. *Id.* A human must have done that. *Id.* This is duplicative of the adequate inquiry argument in section A. As discussed above, the court does not find defendants' inquiry to be inadequate. Therefore, Stormo's motion to compel is denied as it concerns defendants' alleged attempts at misdirection.

### G.  Defendants' Responses Do Not Interject Inadmissible Facts

Stormo moves this court to compel defendants to provide new responses to his interrogatories because their answers contain inadmissible facts. As an example, Stormo claims that Tornow is employed by the city. *Id.* at 11. He claims that, while Tonrow may not be going to work or working on the issue at hand, there is no evidence that he is not currently employed by the city because it has not been published on the City's website. *Id.* The court does not

find this or any other response objected to on the same grounds inadequate in any way. Therefore, Stormo's motion to compel is denied as it concerns defendants' "interjection of inadmissible facts."

### H.  Stormo's Request That the Court Sanction Defendants Is Denied

Stormo moves the court to hold defendants in contempt, sanction defendants in numerous ways, and grant him a default judgment. Docket 141 at 16-21. Because the court finds most of defendants' responses adequate and none of them sanctionable, the court declines to sanction defendants or grant Stormo this relief.

### I.  Defendants' Responses to Interrogatories 4 and 7 Are Inadequate

Stormo moves this court to compel defendants to respond to his interrogatories by doing more than directing him to documents. Defendants claim that they have the right under Federal Rule of Civil Procedure 33(d) to respond by referring to documents they produced to Stormo. Docket 152 at 2. Under the Federal Rules,

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

Interrogatory 4 asked defendants to

"Identify all persons who are likely to have personal knowledge of any fact alleged by Plaintiff and state the subject matter of the personal knowledge possessed by each such person. A complete answer would consider allegation of facts in the complaint or subsequent amendments, supplements or motions, regardless of whether said personal knowledge is alleged to support, or contradict or is neutral to the alleged fact."

Docket 141-3 at 7. Defendants responded by merely stating, "See Documents submitted in Request to Produce[.]" Stormo argues that this does not meet the requirements of Rule 33(d).

Interrogatory 7 asks defendants to "identify each and every material reason including ordinances, facts, policies, statutes, and instructions from management which justified each and every enforcement actions taken again [sic] Plaintiff." *Id.* at 12. Defendants' response merely states, "Information has already been provided and is included in the documents provided in the Request for Production of Documents." *Id.*

Defendants did not comply with Rule 33. They did not "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." Fed. R. Civ. P. 33(d). In fact, defendants did not even attempt to specify the records at all. This is inadequate. Therefore, Stormo's motion to compel is granted as it concerns defendants' failure to specify the documents that respond to interrogatories 4 and 7.

16

### J.       Defendants' Response to Interrogatory 2 Is Inadequate

Stormo moves this court to compel defendants to provide an adequate response to interrogatory 2. Docket 141-3 at 5. Interrogatory 2 states, "For each and every enforcement activity as defined herein, which is within the scope of this interrogatory, identify each and every person who materially participated in the enforcement activity and provide a full description of their role in the enforcement activity." *Id.* Defendants responded: "Shawna Goldammer - Zoning Enforcement Manager[,] R. Shawn Tornow- Assistant City Attorney[, and] Rich Steffen Street Maintenance Supervisor[.]" Stormo argues that he asked for roles, but these are titles. *Id.* at 6. He wanted to know what duty each individual performed such as supervised other employees or took pictures, etc. *Id.* He provided examples in his request. Docket 141-4 at 2-7.

Defendants' response is inadequate. While Stormo's suggestions or instructions are beyond the pale (five pages long for interrogatory 2), defendants' response to Stormo's asking for too much was to give him too little. Apparently, defendants know the answer to Stormo's question, they listed the employees who worked on enforcement against Stormo, and they know what those employees generally did in relation to that enforcement. Even worse, because defendants only listed three employees, listing their duties would have been extremely simple. The decision not to offer that information was unreasonable, and their response is inadequate. Defendants must provide Stormo with the general duties of the employees who worked on his

17

enforcement actions. Therefore, Stormo's motion to compel is granted as it concerns defendants' response to interrogatory 2.

## V.    Defendants' Motion For Protective Order (Docket 144) Is Granted

Defendants move this court to grant a protective order. Docket 144. A party may move for a protective order under Fed. R. Civ. P. 26(c)(1). For good cause, the court may issue a protective order forbidding the discovery. Fed. R. Civ. P. 26(c)(1). Stormo seeks to depose defendant Mayor Huether. Docket 144. Defendants argue that they should be granted a protective order because Mayor Huether is a high ranking government official, has no personal knowledge of the facts of the case, and was not mayor at the time relevant to this case. Stormo contends that Mayor Huether is not a high ranking official. He also argues that Mayor Huether has not shown he has no personal knowledge of the claims, that the information he seeks is not available from a lower ranking employee, and the deposition would not interfere with government administration.

### A.    Mayor Huether Is a High Ranking Official

The parties disagree whether Mayor Huether is currently a high ranking official. Mayor Huether is the mayor of the City of Sioux Falls. Docket 144. Other district courts have found that a mayor is a high ranking government official. *Buono v. City of Newark*, 249 F.R.D. 469 (D.N.J. 2008). This court agrees. As mayor, Huether has greater duties and time constraints than an average witness. *In re U.S.*, 197 F.3d 310, 313 (8th Cir. 1999) (quoting *In re*

18

*U.S.* (*Kessler*), 985 F.2d 510, 512 (11th Cir. 1993)). Mayor Huether is the type of official who "would spend 'an inordinate amount of time tending to pending litigation' " if the courts did not limits these depositions. *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). This court finds that he is a high ranking official for purposes of the protective order.

### B. Stormo Has Not Shown Exceptional Circumstances

"Fed. R. Civ. P. 26(c) requires that 'good cause' be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance . . . ." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). But, in situations with a high ranking government official, courts place the burden on the party seeking discovery to show "exceptional circumstances." *In re U.S.*, 197 F.3d at 314 (citing *Kessler*, 985 F.2d at 512-13). Generally, "the standard for issuance of a protective order is high. A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts, and it is difficult to persuade a court to do so." *Raml v. Creighton Univ.*, No. 8:08CV419, 2009 WL 3335929, at *2 (D. Neb. Oct. 15, 2009) (citing *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). Stormo argues that defendants failed to satisfy the burden, but the burden is on him to show exceptional circumstances.

*In re U.S.* concerns a motion to quash subpoenas directing the US Attorney General and Deputy Attorney General to testify in court. Lee, the

defendant in the criminal case, sought discovery in support of the motion and subpoenaed the officials. *In re U.S.*, 197 F.3d at 311. After stating that the officials were "high government officials," the court explained that Lee must

> establish at a minimum that the Attorney General and the Deputy Attorney General possess information essential to his case which is not obtainable from another source. This means both that the discovery sought is relevant and necessary and that it cannot otherwise be obtained. Without establishing this foundation, 'exceptional circumstances' cannot be shown sufficient to justify a subpoena.

*Id.* at 314 (quoting Kessler, 985 F.2d at 512-13).

Other district courts have cited this case when determining whether to grant an order to protect a high ranking government official from being deposed. *See S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Commissioners*, No. 4:10-CV-2163 CEJ, 2011 WL 1899211 (E.D. Mo. May 19, 2011). In *Lenderman*, the district court stated that the party seeking the deposition "must establish that: (1) the deposition is necessary to obtain relevant information that cannot be obtained from any other source, and (2) that the deposition will not significantly interfere with the ability of the official to perform his or her governmental duties." *Id.* at *2. The court, however, only discussed what the party seeking the protective order failed to prove.

Other Circuits also require this showing from parties seeking to depose government officials. *See Lederman*, 731 F.3d at 203 ("to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition"); *Atlanta Journal & Constitution v. City of Atlanta Dep't*

*of Aviation*, 175 F.R.D. 347 (N.D. Ga. 1997) (noting the policy that parties seeking the testimony of highly placed federal government officials must demonstrate that there is some extraordinary circumstance or special need).

### 1.   Mayor Huether Does Not Have Personal Knowledge

Stormo has not shown that Mayor Huether has personal knowledge of his claims. Stormo is correct to say that Mayor Huether only states in his affidavit that he has no knowledge concerning one of Stormo's surviving claims, rather than all of Stormo's claims. Stormo argues that Mayor Huether has personal knowledge relating to his claims and that Mayor Huether was personally involved in code enforcement, Docket 150 at 3, or encouraged subordinates to violate Stormo's rights. Id. at 5. But it is undisputed that Mayor Huether was not mayor when Stormo's lift was seized in 2009. The remaining claims in Stormo's amended complaint concern things that happened before 2010. All of the allegations involve matters that occurred before Mayor Huether was elected, and Stormo only named Mayor Huether as a defendant in his capacity as mayor. The only incident alleged in the amended complaint that occurred after Mayor Huether's election was a disagreement between the City of Sioux Falls and Stormo's mother. Docket 34 at ¶¶ 142, 154, 161, 198. This is not relevant to any of Stormo's surviving claims. As a result, it does not support the argument that Mayor Huether has personal knowledge of the matter at hand.

Stormo argues that Mayor Huether did not discipline any of the employees who violated his rights before Mayor Huether was elected. Docket 150 at 3, 4. But none of Stormo's remaining claims allege Mayor Huether's liability for failing to punish subordinates for alleged violations.

Stormo argues that Mayor Huether did not change city policy or his own actions when Stormo filed his complaint. *Id.* at 4-5. But actions by a defendant that were taken after a lawsuit is filed are not the basis for a claim in the amended complaint and are likely not admissible evidence. While Stormo's second amended complaint added claims concerning wiretapping, fraud, witness tampering and retaliation, none of those allegations addressed city-wide policies. Therefore, evidence of Mayor Huether's alleged failure to alter city policies after Stormo filed his complaint is not relevant and does not show that Mayor Huether has personal knowledge of the matter at hand.

Stormo also argues that Mayor Huether did not put certain procedures in place after he became mayor. The court has the same response: this does not pertain to any of Stormo's remaining claims and does not support allowing his deposition of Mayor Huether.

Stormo's second amended complaint states claims arising from incidences that occurred while Mayor Huether was in office. He claims that City officials have violated federal wiretapping and communications laws by their actions in relation to this lawsuit. Docket 34 at 364-67, 376-79. Stormo does not allege that Mayor Huether was personally involved in these actions,

22

only that he was mayor while they happened. This shows that Mayor Huether is unlikely to have first-hand knowledge of the matter and suggests that another deponent could provide the same, if not better, information without interfering with government operations at such a high level.

Stormo argues that defendants cannot allege Mayor Huether has no personal knowledge of the matter at hand because they have not interviewed him. Docket 150 at 4. He claims that he submitted an interrogatory that asked defendants "to name persons who gave management instructions and persons with knowledge of material facts regarding this matter." *Id.* Stormo attached interrogatory questions that do not make this request. *See* Docket 150-1.

Stormo also argues that he asked who defendants interviewed in order to respond to that interrogatory. Docket 150 at 4. He claims this should have produced a list of people who potentially had knowledge of the matters surrounding his claim. The interrogatory Stormo attached, however, asks for the identity of "every person contributing substantive information to or materially participating in the answering of interrogatories or identifying Documents satisfying a discovery request for this case and a description of the nature and subject matter of their contribution." Docket 150-2. The fact that Mayor Huether was not on this list is evidence that he does not have knowledge of these matters because he was unable to contribute "substantive information" or materially participate in answering the questions or identifying documents.

Because of these reasons, Stormo has failed to show the "exceptional circumstances" necessary to allow him to depose Mayor Huether.

### 2. It Is Immaterial That Mayor Huether's Affidavit Did Not Propose Alternative Deponents or Present Evidence That His Deposition Would Interfere With Government Business

Stormo also argues that the protective order should not be granted because defendants' motion and Mayor Huether's affidavit did not propose a different deponent and did not offer evidence that the deposition would interfere with the administration of the government. Stormo argues that Mayor Huether is liable because he oversaw allegedly illegal acts. But the court finds that the people who allegedly committed those acts could be deposed, and they are all lower level government officials. Also, Stormo attached a list of people to his opposition who provided information to answer his interrogatories. He is aware who has information regarding the matter at hand. These people are much more likely than Mayor Heuther to have the information Stormo seeks.

Stormo argues that defendants' motion and Mayor Huether's affidavit did not present evidence that the deposition would interfere with the administration of the government. This is self-evident. Mayor Huether is the highest ranking official in the municipal government for the largest city in the state and taking a day to be deposed would interfere with the city's business. Therefore, the court agrees with defendants that this would interfere with the administration of city government.

For the reasons above, defendants motion for a protective order is granted.

## CONCLUSION

Stormo moves this court to modify its summary judgment order (Docket 120) and compel defendants to produce or reproduce discovery (Docket 123; Docket 139; Docket 141). He argues that defendants' responses are inadequate for a number of reasons. The court denies his motion to modify the summary judgment order and grants in part and denies in part his motions to compel. Defendants move for an order protecting Mayor Huether from being deposed. Because the court finds that Mayor Huether is a high ranking government official without personal knowledge of the matter, this motion is granted. Therefore, it is ORDERED

1. Stormo's motion to modify the summary judgment order (Docket 120) is denied.

2. Stormo's motion to compel production of documents (Docket 123) is granted to the extent it concerns claims raised in his amended complaint that survive. Defendants are ordered to re-evaluate their responses to document requests 8, 9, 15, 21, 36, 37, 45, 46, 53, and 54 and supplement them if necessary.

3. Stormo's motion to compel (Docket 139) is granted to the extent it requests an index for discovery production in the manner discussed

in this opinion and denied to the extent it requests production of documents in their native format and production of metadata.

4. Stormo's motion to compel (Docket 141) is denied to the extent it concerns the adequacy of defendants' inquiry into discovery requests, the meaning of the word seizure, the obstructive manner of defendants' answers, the "form" of defendants' answers, the defendants' attempts to misdirect, defendants' injections of inadmissible facts, and granted to the extent it requests defendants do more than direct him to produced documents in response to interrogatories 4 and 7 and relates to the adequacy of defendants' response to interrogatory 2.

5. Stormo's requests for default judgment and sanctions are denied.

6. Defendants' motion for a protective order (Docket 144) is granted.

Dated February 19, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE