UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ERIC STORMO,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF SIOUX FALLS, R. SHAWN TORNOW, DAVE MUNSON, MIKE HUETHER, PAT KNEIP, DOUG BARTHEL, and JOHN DOE,<br><br>                    Defendants. | 4:12-CV-04057-KES<br><br><br><br>ORDER |

**INTRODUCTION**

Plaintiff, Eric Stormo, filed this pro se lawsuit naming the City of Sioux Falls, R. Shawn Tornow, Dave Munson, Mike Huether, Pat Kneip, Doug Barthel, and John Doe as defendants. Defendants now move for summary judgment. Docket 186. Stormo filed a motion for summary judgment and numerous other motions. For the following reasons, defendants' motion for summary judgment is granted in part and denied in part, Stormo's motions to compel are denied in part and granted in part, and the court grants defendants leave to respond to Stormo's remaining motions.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I.      Defendants' Motion for Summary Judgment

#### A.      Illegal Search and Seizure Claim

Defendants contend that they are entitled to summary judgment based on qualified immunity because the actions of the defendants involved in the removal of Stormo's lift were objectively reasonable. Docket 188 at 5. Section 1983 provides a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the

2

deprivation of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983. The doctrine of qualified immunity, however, generally shields " '[G]overnment officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two factors in either order. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). But "[t]o deny the officers qualified immunity, [the court] must resolve both questions in [the plaintiff's] favor." *Hawkins v. Gage County*, 759 F.3d 951, 956 (8th Cir. 2014).

Defendants argue that they are entitled to summary judgment on Stormo's Fourth Amendment claim. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. " 'A seizure of property occurs when there is some meaningful

3

interference with a person's possessory interests in that property.' " *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (quoting *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994)).

"The reasonableness standard of the Fourth Amendment applies to any seizure by the government in any context." *Coleman v. Watt*, 40 F.3d 255, 262 (8th Cir. 1994). Because Stormo's lift was undoubtedly "seized" for purposes of the Fourth Amendment, "[t]he question is whether there was anything unreasonable about the seizure which would place it among those prohibited by the Fourth Amendment." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999). The reasonableness inquiry requires a "careful balancing of governmental and private interests." *Soldal v. Cook County*, 506 U.S. 56, 71 (1992) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

Here, defendants allege that they were acting under a valid court order: the default judgment obtained in state court. The United States Supreme Court has stated in dicta that if "officers were acting pursuant to a court order, . . . a showing of unreasonableness on these facts would be a laborious task indeed." *Id.*

In *Johnson*, the Eighth Circuit Court of Appeals upheld as constitutional the seizure of a boat and a trailer by a deputy sheriff pursuant to "a valid writ of execution directing him to levy on personal property of a debtor corporation at the residence address of the corporation's secretary[.]" *Johnson*, 172 F.3d at 533. The deputy was told by plaintiff and his attorney that he could not levy on

the boat and trailer, but he did it anyway. *Id.* at 534. A week after the seizure, plaintiffs filed a Notice of Exemptions to the execution, and the court ordered the boat and trailer released to defendants. *Id.*

The Court of Appeals upheld the trial court's finding that the deputy's actions were "objectively reasonable under the facts." *Id.* at 536. The court noted that the deputy "execut[ed] a valid writ on property located at the given address, property which he had reason to believe was the same type of property handled by the debtor corporation[,]" he was told by his superior that plaintiff had no protection from the execution to satisfy the judgment, there was reason to believe that plaintiff was going to hide or move the boat soon, plaintiff could not prove he owned the boat, and the boat was levied upon during the day in a driveway. As a result, the Court found that the privacy concerns of the Fourth Amendment were not raised. *Id.* at 536-37.

Plaintiff argued that the seizure was unreasonable because the deputy was wrong to believe that he could levy on the boat and trailer. *Id.* at 537. The court rejected this argument, holding that the mistake itself did not make the seizure unreasonable, and the deputy was not obliged to follow plaintiff's attorney's legal advice. Therefore, the court found the seizure reasonable.

In *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 736 (8th Cir. 2001), *reconsideration en banc granted, judgment vacated* (July 30, 2001), *opinion reinstated sub nom. Audio Odyssey v. Brenton First Nat'l Bank*, 286 F.3d 498 (8th Cir. 2002), the Court of Appeals explained that *Johnson* "did

not purport to immunize all errant seizures" but held that "an erroneous seizure of personal property is not necessarily an 'unreasonable' one, and that the officer in [*Johnson*] had a reasonable basis for seizing a boat and trailer that fell outside of a writ of execution." *Id.* The court explained that the real question was "whether the officer's mistake [was] objectively reasonable." *Id.*

### 1.   Tornow

Stormo argues that the default judgment obtained by Tornow was invalid. In the attachments to his motion for summary judgment, Stormo provided copies of the motions filed in the state court case that were served on Tornow in his capacity as a deputy city attorney prior to the City moving for default judgment and prior to the seizure of the lift. Docket 194-4; Docket 194-5. The City's motion for default judgment was based on the representation Tornow made in his affidavit that Stormo had "made no responsive answer, and/or appearance and is now therefore wholly in default[.]" Docket 194-6 at 3.

Stormo moved to set aside the default judgment on March 24, 2009, ten days before the lift was removed by defendants on April 3, 2009. Docket 194-3. Stormo's motions were found by the state court to constitute an appearance, docket 194-6 at 4, and the default judgment was vacated by the state court on September 10, 2009. Docket 194-6. Stormo has provided evidence to create a question of fact as to whether Tornow's affidavit in support of the default judgment was unreasonably mistaken, whether the default judgment was invalid, and whether the seizure was objectively reasonable. Stormo has also

provided evidence that suggests Tornow was aware of the invalidity of the default judgment because Tornow had been served with Stormo's motion to set aside the default judgment before the lift was removed by defendants. Stormo also alleges that Tornow told city employees that the default judgment was valid and directed them to seize Stormo's lift. Docket 34 at 15. Because questions of material fact exist, the motion for summary judgment on Stormo's Fourth Amendment claim is denied as to Tornow.

### 2. Pat Kneip and John Does

Stormo alleges that Pat Kneip and John Doe city employees violated his rights under the Fourth Amendment by seizing his lift. Pat Kneip and other city employees' actions were objectively reasonable under the circumstances. In *Johnson*, 172 F.3d at 537, the Eighth Circuit rejected the argument that a deputy's seizure of property violated the Fourth Amendment because his belief that he could levy plaintiff's property was incorrect.

Stormo raises the same argument here. He has not put forth evidence showing that Kneip or the Does involved in the seizure of the lift knew any of the facts discussed above about the invalidity of the default judgment. According to Stormo's amended complaint, these defendants were directed by Tornow. Therefore, their actions were objectively reasonable, and Kneip and John Does did not violate Stormo's Fourth Amendment rights. Summary judgment is granted in favor of Kneip and John Does on this claim.

7

### 3. Defendants Munson, Huether, and Barthel

Stormo named Munson and Huether as defendants in their capacities as elected city officials. Docket 34 at 5. He named Barthel as a defendant in his capacity as Sioux Falls Chief of Police. *Id.* Stormo claims that these defendants are liable for his injuries because of their alleged acts and omissions as supervisors. *Id.* at 51-60.

"[V]icarious liability is inapplicable to § 1983 suits[.]" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Stormo has not set forth specific facts in the record showing that Munson, Huether, or Barthel directly participated in the violations he alleges.

> When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.

*S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)).

Stormo has not set forth specific facts in the record showing that Munson or Huether were deliberately indifferent to or authorized Tornow's actions as discussed above. Merely being Tornow's supervisor does not make them liable. As Chief of Police, Barthel did not supervise Tornow, and the court

8

has granted summary judgment to the defendants he supervised on Stormo's Fourth Amendment claims. Therefore, summary judgment is granted to Munson, Huether, and Barthel.

### 4.    City of Sioux Falls

Stormo claims that the City of Sioux Falls is liable for the alleged violation of his Fourth Amendment rights. He puts forth four grounds on which to base this liability. He argues the City created a custom that it was acceptable to violate constitutional rights. Docket 34 at 65. He argues that Tornow was a policymaker for the City. *Id.* at 63. He argues that the City was deliberately indifferent to the risk of a constitutional violation. *Id.* at 68. Finally, he argues that the City failed to train its subordinates. *Id.* at 67-68.

A municipality may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).[1] Municipalities, however, "are responsible only for 'their own illegal acts.' " *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

A municipality cannot be held liable solely because of the acts of its employees, but "the municipality may be held liable 'when execution of a government's policy or custom ... inflicts the injury.' " *Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010) (quoting *Monell*, 436 U.S. at 691, 694).

---

[1] This discussion also applies to Stormo's claims against defendants in their official capacities. *See Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (claims against officials in their official capacities are treated as claims against the municipality).

### a.    Policy

Stormo argues that the City is liable because his constitutional rights were violated by its policies. Docket 34 at 65. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 60 (quoting *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61. "These are 'action[s] for which the municipality is actually responsible.' " *Id.* (quoting *Pembaur*, 475 U.S. at 479–80). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* "A 'policy' is a 'deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.' " *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005) (quoting *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 674 (8th Cir. 2004)).

Stormo alleges that Tornow is a policymaker, and Tornow allegedly violated his Fourth Amendment rights by his actions directing others to unlawfully seize his lift. Docket 34 at 63. "Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if

10

the decision is 'taken by the highest officials responsible for setting policy in that area of the government's business.' " *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the United States Supreme Court discussed whether and in what circumstances a single decision by a municipal policymaker can satisfy the *Monell* requirements for municipal liability. The facts of *Pembaur* were similar to those in this case. In *Pembaur*, a county prosecutor ordered sheriff's deputies to chop down the door of Pembaur's clinic in order to serve two warrants on people inside the clinic. *Id.* at 472-73. Pembaur filed a § 1983 case arguing that his Fourth Amendment rights had been violated because the deputies did not have a search warrant. *Id.* at 474. The Supreme Court found that the county prosecutor's direction to the sheriff's deputies to break into the clinic constituted official county policy because state law gave the prosecutor final policymaking authority over law enforcement matters. *Id.* at 485. *Pembaur* would control this case if Tornow was in the same position as the county prosecutor in *Pembaur*.

The issue of whether Tornow exercised final policymaking authority is a question of state law. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1217 (8th Cir. 2013) (citation omitted). Stormo's complaint alleges that Tornow was an assistant city attorney "acting under the direction and control of the Mayor and City Attorney of the City of Sioux Falls[.]" Docket 34 at 5. Tornow's title

11

alone indicates that he was not a final policymaker. While Tornow may have had unchecked discretion to enforce policies, *i.e.* to seek a default judgment and direct city employees to seize Stormo's lift, there is no evidence in the record showing that Tornow had the authority to create the policies. *See Davison v. City of Minneapolis*, 490 F.3d 648, 660 (8th Cir. 2007) (explaining that "[t]he Supreme Court has distinguished final policymaking authority from final decisionmaking authority"); *Bernini v. City of St. Paul*, 665 F.3d 997, 1008 (8th Cir. 2012) (finding defendants actions insufficient to impose liability on the city because plaintiffs failed to identify a state or municipal law establishing that defendants had final policymaking authority). Thus, the court finds as a matter of law that Tornow was not a policymaker.

While Huether, Munson, and Barthel are all arguably policymakers, Stormo has not identified any evidence to show they made a deliberate choice to follow a course of action made from various alternatives with respect to the seizure of the lift. As a result, Stormo has not shown establishment of an official city policy that violated his constitutional rights.

Stormo also argues that defendants were deliberately indifferent to the obvious consequences of their policy, even if the policy was facially constitutional. Docket 34 at 68.

> Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers. The standard of

fault in that situation is 'deliberate indifference' to constitutional rights.

*Szabla v. City of Brooklyn Park*, 486 F.3d 385, 396 (8th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

"A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005) (citing *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999)). The deliberate indifference standard is a "rigorous" standard of fault. *Atkinson*, 709 F.3d at 1216. Stormo does not show that defendants were deliberately indifferent to the consequences of their policy. The record shows, at most, a single non-policymaker, Tornow, arguably violating Stormo's constitutional rights. This does not show deliberate indifference on the part of any of the other defendants and cannot be the basis for the City's liability.

### b. Custom

Stormo argues that the City is liable because of its custom that it was acceptable to violate constitutional rights. Docket 34 at 65. To prove a "custom" the claimant must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990)).

Stormo has not put forth evidence to create a question of fact as to the first or second prongs. While there is evidence of a single decision by a city employee that may rise to the level of unconstitutional conduct, there is no evidence in the record of a continuing, widespread, persistant pattern of unconstitutional misconduct by the City's employees. Additionally, there is no evidence that Huether, Munson, and Barthel, who are arguably policymakers, were deliberately indifferent or tacitly authorized any allegedly unconstitutional conduct after being notified of the alleged unlawful seizure of the lift or any similar conduct. Therefore, Stormo has failed to prove that a City custom injured him.

### c.    Failure to Train

Stormo alleges that the City is liable for his alleged injuries because it and other defendants failed to train city employees to stop them from violating his constitutional rights. Docket 34 at 67-68. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. Municipality liability for a deprivation of rights "is at its most tenuous where a claim turns on a

14

failure to train." *Id.* Stormo must show that the City's failure to train its employees amounts "to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (quoting *Canton*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Id.* (quoting *Canton*, 489 U.S. at 389). Stormo has not set forth specific facts in the record showing that the City's liability can be based on a failure to train city employees.

Because Stormo fails to set forth specific facts in the record showing an adequate ground for the City's liability, the City is granted summary judgment as to Stormo's Fourth Amendment claims under § 1983.

### B.   Wiretap, Electric Communications, and Computer Fraud and Abuse Claims

Defendants move for summary judgment on Stormo's claims under 18 U.S.C. §§ 2520, 2707, and 1030. To oppose defendants' motion, Stormo "may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial." *Denn*, 816 F.3d at 1032 (citing *Anderson*, 477 U.S. at 256). In his amended complaint, Stormo claimed that defendants violated his rights by intercepting his phone conversations with an expert and by monitoring his computer research. Docket 34 at 45-48.

The only allegations he puts forward are that defendants' attorney said that certain settlement figures were unrealistic, these were the same amounts Stormo discussed with the expert, and that defendants declined to pursue a legal argument after Stormo had researched it on his home computer and

discovered it was unsupportable. Other than these bare allegations, these claims are based only on Stormo's belief and assumption that his rights were violated. He does not offer any specific facts in the record showing a genuine issue concerning violations of these statutes. Therefore, defendants' motion for summary judgment is granted as to Stormo's wiretap, electric communications, and computer fraud and abuse claims.

### C.   Claims Against Mayor Huether

In the amended complaint, Mayor Huether is named as a defendant only in his capacity as mayor. Docket 34 at 54-56. The allegations against Mayor Huether concern actions taken after he was elected. *Id.* It is undisputed that Mayor Huether was not the mayor in 2009 at the time the lift was seized. Because the court grants summary judgment in the previous section on all of Stormo's claims that took place after Mayor Huether was elected, Mayor Huether is entitled to summary judgment in his favor on all claims.

### D.   State-Law Claims

Stormo raised four state-law claims in his amended complaint that have survived: trespass, conversion, conspiracy to commit trespass, and conspiracy to commit conversion. Defendants argue that they are entitled to common-law immunity as to the trespass and conversion claims. Defendants also claim that they are entitled to summary judgement on all state-law claims because defendants acted under a valid court order.

16

### 1.    Common-Law Immunity

Stormo argues that defendants waived the common-law immunity

defense because they did not raise it in their response to his complaint. Docket

205 at 16.

> In responding to a pleading, a party must affirmatively state any
> avoidance or affirmative defense, including: accord and
> satisfaction; arbitration and award; assumption of risk;
> contributory negligence; duress; estoppel; failure of consideration;
> fraud; illegality; injury by fellow servant; laches; license; payment;
> release; res judicata; statute of frauds; statute of limitations; and
> waiver.

Fed. R. Civ. P. 8(c).

Even if defendants' common-law immunity defense constitutes an

affirmative defense, the Eighth Circuit "ha[s] held that '[w]hen an affirmative

defense is raised in the trial court in a manner that does not result in unfair

surprise, ... technical failure to comply with Rule 8(c)  is not fatal.' " *First Union*

*Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007)

(quoting *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n.9

(8th Cir. 1990)); *see also Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d

1091, 1093–94 (8th Cir. 1996) (citing favorably a Ninth Circuit Court of

Appeals opinion stating "in absence of prejudice, affirmative defense may be

raised for first time in [a] summary judgment motion"). Stormo has not claimed

that he was prejudiced by defendants' failure to raise the defense of common-

law immunity in their response to his complaint, and the record suggests he

has not been prejudiced because he was given an opportunity to respond to the

defense. Therefore, defendants did not waive the defense of common-law immunity.

The South Dakota Supreme Court has stated, "At common law, . . . an officer of the law may ordinarily trespass when acting in the scope of his duty." *Swedlund v. Foster*, 657 N.W.2d 39, 57 (S.D. 2003) (citing *State v. Cook*, 319 N.W.2d 809, 812 (S.D. 1982)). Otherwise "a search would be a trespass." *Id.* "The officer is privileged to do these things because it is the officer's job. If the officer was not afforded privilege, he could not do his job without being sued . . . ." *Id.* at 55. This privilege, however, "is not without limitations." *Id.* "If the officer is not executing a valid search warrant, a warrantless search and seizure is unreasonable absent probable cause and exigent circumstances." *Id.* (citations omitted).

Defendants cite *Swedlund* in support of their argument that they are entitled to common-law immunity under South Dakota law. In *Swedlund*, the law enforcement officers had a valid warrant to search one house but accidentally searched the house next door. *Id.* at 56. The South Dakota Supreme Court held that "[s]ince the officers had no authority to search [the Swedlunds'] house, they cannot claim their actions are privileged from the Swedlunds' state tort claims for trespass." *Id.* at 57.

Stormo alleges that the default judgment was invalid and defendants therefore had no authority to seize his lift. His allegations are similar to those in *Calamia v. City of New York*, 879 F.2d 1025 (2d Cir. 1989), where the Second

18

Circuit Court of Appeals found that common-law immunity did not apply. The court affirmed the denial of a judgment of dismissal on state-law claims for conversion and negligent disposition of property even though Sutton, the defendant police officer, seized the property pursuant to a facially valid search warrant. *Id.*

Defendant Smyth, a woman who alleged that she owned an antique store with Calamia, complained to the police that Calamia had stolen property from their store. *Id.* at 1027. Sutton went with Smyth to Calamia's apartment. *Id.* at 1028. Afterwards, he averred that he had seen the property at issue in Calamia's apartment, even though he later testified at the trial that he had not seen all of the items in the apartment. *Id.* This affidavit was used to obtain a search warrant of Calamia's apartment. *Id.* at 1029. The police searched the apartment and arrested Calamia. *Id.* The charges were later dropped after Calamia showed that he was the owner of the property. *Id.* Calamia brought suit and raised a state-law claim of conversion. *Id.*

Sutton argued that he "could not be liable for . . . conversion because he seized [Calamia's property] pursuant to a facially valid search warrant." *Id.* at 1031. The court found, however, that "[a]lthough in general '[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face,'" there is "no such privilege when he has procured the order by means of an intentional misrepresentation to the issuing authority." *Id.* (quoting

19

Restatement (Second) of Torts § 266 (1965)). The court quoted the Restatement stating that "in order for the writ to be valid, it is required, inter alia, that 'all proceedings required for the proper issuance of the writ ... have duly taken place.' " *Id.*

The court found that proceedings in which the officer intentionally or recklessly made false statements to the court issuing the warrant cannot be regarded as "proceedings duly taking place." *Id.* The court held that "the state-law privilege normally conferred on an officer by a court order does not exist when the officer has procured the order by means of an intentional or reckless misrepresentation." *Id.* Because the evidence was "sufficient to permit [the jury] to infer that Sutton had intentionally withheld information or provided inaccurate information in his affidavit in order to obtain the warrant[,]" the court upheld the judgment against Sutton. *Id.* at 1032.

### a.   Tornow

Stormo presents an argument that is similar to the decision of the court in *Calamia.* He alleges that Tornow "intentionally withheld information or provided inaccurate information in his affidavit" to obtain the default judgment, just as Sutton did. Stormo has presented evidence that he filed motions in the state court case well before Tornow filed his affidavit of default alleging that Stormo had not appeared in the case. Docket 194-2; Docket 194-3. The state court found that Tornow had been served with both motions. Docket 194-6 at

2-3. The state court then vacated the default judgment because Stormo's filings constituted an appearance. *Id.* at 4.

Defendants provide as evidence Tornow's depositions in which he testifies about these motions. Docket 189-11. Tornow's testimony mainly concerns the fact that Stormo did not file a motion to stay execution of the default judgment. *Id.* at 2-3. When testifying about Stormo's first motion, Tornow stated that he did not see that motion "on February 3rd," and he did not know if he saw it "that month or months later." *Id.* at 2. Tornow filed the affidavit seeking a default judgment more than a month after Stormo filed his motion in state court. And the state court, after reviewing all the evidence, entered an order vacating the default judgment. This court finds that Stormo has set forth specific facts in the record showing that there is a genuine issue of disputed fact for trial. Therefore, defendants' motion for summary judgment based on common-law immunity is denied.

#### b.    Defendants Kneip and Does

Defendants argue that Kneip and Does cannot be held liable for their actions because they acted pursuant to a court order. *Swedlund* applies to Kneip and Does' motion for summary judgment based on common-law immunity. The facts of *Swedlund* are different than the present case because there the officers had a valid warrant for a different house than the one they searched. *Swedlund*, 657 N.W.2d at 56. Here, Stormo challenges the validity of the default judgment, which was the basis of Kneip and Does' search.

In *Swedlund*, the South Dakota Supreme Court stated that "[s]ince the officers had no authority to search [the Swedlunds'] house, they cannot claim their actions are privileged from the Swedlunds' state tort claims for trespass." *Id.* at 57. That is applicable here. Stormo argues that the invalid default judgment did not authorize Kneip and Does' search, and they therefore cannot claim their actions are privileged from his state-law tort claims. Because Stormo has raised genuine issues of material fact as to whether the default judgment was valid, Kneip and Does' motion for summary judgment based on common-law immunity is denied.

### c.   Defendant Barthel

Stormo named Barthel as a defendant in his capacity as Sioux Falls Chief of Police. Docket 34 at 5. Stormo has presented no evidence that Barthel took any part in the alleged violation of his constitutional rights, and the record does not suggest that he did. Therefore, Barthel is granted summary judgment based on common-law immunity as to all of Stormo's state-law claims.

### d.   Defendant Munson

Stormo has not set forth specific facts in the record showing that there is a genuine issue as to whether Munson was involved in obtaining the default judgment or directing city employees to seize Stormo's property. Therefore, Munson is granted summary judgment based on common-law immunity as to Stormo's state-law claims. *See Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir.

2006) (mayor may not be held personally liable for city employees' failures of which he had no knowledge).

### e.    City of Sioux Falls

The City can be liable for state-law torts of its employees based on a *respondeat superior* theory. In *Red Elk ex rel. Red Elk v. United States*, 62 F.3d 1102 (8th Cir. 1995), the Eighth Circuit held the federal government liable for a tribal officer's rape of a child he had picked up for violating curfew. The court found that it was "foreseeable" that an officer with the "authority to pick up a teenage girl out alone at night in violation of the curfew might be tempted to violate his trust. [The officer] had that opportunity because of his employment, the trappings of his office, and the curfew policy he was to enforce." *Id.* at 1107.

The Eighth Circuit later described *Red Elk* as determining "that 'foreseeability is central to the analysis' of whether the complained-of acts occurred within the scope of employment such that an employer can be held vicariously liable for the actions of its agent." *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 462–63 (8th Cir. 2009) (quoting *Red Elk*, 62 F.3d at 1107). The South Dakota Supreme Court explained that, in this analysis, "foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." *Leafgreen v. Am. Family Mut. Ins. Co.*, 393 N.W.2d 275, 280-81 (S.D. 1986).

Here, Tornow was acting under the authority of the City when he obtained a default judgment from the state court and directed city employees to seize Stormo's lift. Tornow obtained the default judgment as an assistant city attorney; he was acting within his duties. His conduct was foreseeable in the sense described in *Leafgreen*, and it is therefore not unfair to hold the City liable for his alleged state-law violations. The court will now determine whether the remaining defendants-City, Tornow, Kneip, and Does-are entitled to summary judgment on Stormo's state-law claims.

### 2.   Conversion

" 'Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right.' " *W. Consol. Co-op. v. Pew*, 795 N.W.2d 390, 396 (S.D. 2011) (quoting *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton*, 756 N.W.2d 19, 31 (S.D. 2008)). Defendants argue that the "actions alleged to constitute conversion in this case were authorized by a valid court judgment." Docket 188 at 16.

As discussed above, Stormo has set forth specific facts in the record showing that there is a genuine issue as to whether the default judgment was valid and whether the conversion was authorized. Therefore, the motion for summary judgment is denied as to Stormo's conversion claim against the City, Tornow, Kneip, and Does.

24

Defendants also argue that "[a]llowing Plaintiff to proceed with his conversion claim would undercut all court authorized seizures and expose the government, creditors, and everyday individuals to conversion liability for acting in accord with court judgments." *Id.* The court disagrees. While this is a serious concern, denying defendants' motion for summary judgment only undercuts seizures when the plaintiff raises a genuine issue of fact of whether there was a valid court order authorizing the seizure. Presumably, this applies to very few seizures. The court rejects this argument.

### 3. Trespass

Under South Dakota law, a trespass occurs when a person "intentionally and without a consensual or other privilege . . . enters land in possession of another . . . ." *Benson v. State*, 710 N.W.2d 131, 159 (S.D. 2006). Defendants argue that they were not without privilege because of the default judgment. Docket 188 at 17. As discussed above, however, Stormo has set forth specific facts in the record showing that there is a genuine issue as to whether the default judgment was valid and whether the trespass was privileged. Therefore, the motion for summary judgment is denied as to Stormo's trespass claim against the City, Tornow, Kneip, and Does.

### 4. Conspiracy

"A civil conspiracy is, fundamentally, an *agreement* to commit a tort." *Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008) (citation and quotation marks omitted). Civil conspiracy "*is sustainable only after an underlying tort*

*claim has been established.*" *Id.* (citation and quotation marks omitted).
Defendants argue they are entitled to summary judgment on Stormo's
conspiracy claims because they are entitled to summary judgment on his other
state-law claims. Docket 188 at 19. Because the court denies the motion for
summary judgment as to the trespass and conversion claims as against the
City, Tornow, Kneip, and Does, the motion is also denied as to the conspiracy
claim as against the City, Tornow, Kneip, and Does.

Defendants also argue in a footnote that Tornow should be dismissed as
a defendant because he did not personally participate in the removal of the lift.
*Id.* at 19 n.1. The elements of civil conspiracy are: " '(1) two or more persons;
(2) an object to be accomplished; (3) a meeting of the minds on the object or
course of action to be taken; (4) the commission of one or more unlawful overt
acts; and (5) damages as the proximate result of the conspiracy.' " *Huether v.
Mihm Transp. Co.*, 857 N.W.2d 854, 861 (S.D. 2014) (quoting *In re
Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484,
1498 (8th Cir. 1997)). Tornow is implicated as an alleged co-conspirator to the
trespass on Stormo's property, seizure of Stormo's lift, and conversion of the
lift. Therefore, the motion for summary judgment is denied as to Stormo's
conspiracy claim against the City, Tornow, Kneip, and Does.

### 5.    Prosecutorial Immunity

Defendants argue that Tornow is not liable because he is entitled to
prosecutorial immunity. Docket 188 at 19 n.6. Prosecutors are absolutely

immune when they take actions that are "intimately associated with the judicial phase of the criminal process," as opposed to investigative or administrative actions. *Reasoner v. St. Louis County*, 447 F.3d 569, 579-80 (8th Cir. 2006). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486–87 (1991). The Supreme Court has been " 'quite sparing' in [its] recognition of absolute immunity, and [has] refused to extend it any 'further than its justification would warrant.' " *Id.* at 487 (citations omitted). Federal courts of appeal have found prosecutors absolutely immune for certain activity in civil actions. *See Parette v. Virden*, 173 F. App'x 534, 536 (8th Cir. 2006) (City Attorney absolutely immune from liability arising from prosecuting a condemnation action); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (District Attorney absolutely immune from liability arising from preparing and deciding to file public nuisance and civil forfeiture complaints).

"The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486–87 (citations omitted). Defendants have not made this showing. Their argument is presented in a footnote on the last page of their memorandum supporting their Motion for Summary Judgment and does not cite to any evidence that Tornow acted as a prosecutor in his position.

Even if defendants had cited to evidence that Tornow acted as a prosecutor, the court would have to examine whether Tornow's functions were

covered by immunity. To determine whether absolute immunity applies to Tornow's actions, the court examines " 'the nature of the function performed, not the identity of the actor who performed it.' " *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). In *Kalina*, the Supreme Court discussed whether a prosecutor is protected by absolute immunity for making false statements of fact in an affidavit supporting an application for an arrest warrant. The prosecutor began a criminal proceeding against the plaintiff by filing three documents, including a "Certification for Determination of Probable Cause." *Id.* at 120-21. In this certification, the prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury." *Id.* at 121. The certification contained two inaccurate factual statements. *Id.* Based on the certification, the state court "found probable cause and issued an arrest warrant," and the plaintiff was later arrested. *Id.* at 121-22. After the charges were dropped, the plaintiff brought an action for a violation of his Fourth Amendment rights protecting him from unreasonable searches and seizures because the prosecutor had made false statements in the certification. *Id.* at 122.

The Supreme Court held that the prosecutor's activities would be "part of the advocate's function" and protected by absolute immunity, "except for her act in personally attesting to the truth of the averments in the certification[.]" *Id.* at 129. The Court noted that "neither federal nor state law made it necessary for the prosecutor to make that certification. In doing so, petitioner

performed an act that any competent witness might have performed." *Id.* at 129-30. The prosecutor was immune in activities such as "her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court" because these actions "involved the exercise of professional judgment[.]" *Id.* at 130. The Court found that testifying about facts, however, is a function of a witness, not of a lawyer because her professional "judgment could not affect the truth or falsity of the factual statements themselves". *Id.*

The facts of *Kalina* are similar to those in the present case. In the Affidavit and Motion for Default Judgment, Tornow swore under oath that Stormo had not appeared and was in default. Docket 189-6. The state court later stated that "based upon the representation made in the Affidavit, the Court signed the [Default] Judgment on the 17th day of March, 2009[.]" Docket 194-6. Like the prosecutor in *Kalina*, Tornow is not absolutely immune for this action because it is the function of a witness rather than a lawyer. Therefore, Tornow's motion for summary judgment based on prosecutorial immunity is denied.

## II.   Stormo's Motion for Summary Judgment

Stormo moves for summary judgment on eight issues:

1) that under South Dakota law and South Dakota Supreme Court precedence a default judgment obtained without fulfilling procedural requirements is void

2) that under South Dakota law and South Dakota Supreme Court precedence a default judgment obtained by misrepresentation is void

3) that under South Dakota law and South Dakota Supreme Court precedence a void default judgment gives no rights to any party

4) that the default judgment obtained by the City of Sioux Falls on March 17th, 2009 and used as authority by the Defendants on behalf of the City of Sioux Falls on April 3rd, 2009 to seize and retain the Plaintiff Stormo's electric/hydraulic scaffold equipment (Workforce XLB 4232 manhft) was not valid at the time the manlift was seized

5) that the default judgment obtained by the City of Sioux Falls on March 17th, 2009 and used as authority by the Defendants on behalf of the City of Sioux Falls on April 3rd, 2009 to seize and retain the Plaintiff Stormo's electric/hydraulic scaffold equipment (Workforce XLB 4232 manlift) was void at the time the manlift was seized

6) that pursuant to controlling South Dakota law and South Dakota Supreme Court precedence a trial judge lacks the discretion to do anything but vacate a void default judgment upon motion of a party to the case

7) the Defendants had been notified by at least March 25th, 2009 via Stormo's Motion And Brief To Set Aside Default Judgment, or at least 8 days prior to the seizure of the manlift, that the default judgment was void

8) the Defendants had been notified by at least March 25th, 2009 via Stormo's Motion And Brief To Set Aside Default Judgment, or at least 8 days prior to the seizure of the manlift, of controlling South Dakota Supreme Court case law which established that once Stormo motioned to vacate the void default judgment the judge m the case had no discretion to take any action with respect to the void default judgment except to vacate the default judgment[.]

Docket 194 at 1-2.

Under the Federal Civil Rules of Procedure, a party moving for summary judgment must identify "each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Stormo does not identify any claims or defenses in his motion for summary judgment. Stormo seeks summary judgment on factual and legal "issues" that are inappropriate to decide on summary judgment. Therefore, Stormo's motion for summary judgment is denied.

## III.   Stormo's Motion to Modify Judgment on the Pleadings

Stormo moves to modify the court's order granting defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 54(b).[2] Docket 191. Rule 54(b) states:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Stormo reasserts his argument that he stated a valid claim for a civil remedy under the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1964, because he pleaded adequate facts to state a claim under that

---

[2] Stormo also moves under Federal Rule of Civil Procedure 56, but does not explain how the rule concerns modifications of orders. The court finds that this Rule is inapplicable to Stormo's motion.

section. *See* Docket 167 at 7. This court has already denied that claim. *See* Docket 168 at 8. Stormo's 71-page second amended complaint makes a single reference to RICO, stating "That at all relevant times it was well established law that many of the acts complained of were RICO predicates." Docket 34 at 9. This single sentence did not put defendants on notice that Stormo was alleging that they violated RICO. Stormo now requests that the court modify this denial because the court did not consider his claim on the record and explain its logic in denying the claim. Docket 191 at 2.

"A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief." *Anderson v. Cornejo*, 199 F.R.D. 228, 246 (N.D. Ill. 2000) (citing Fed. R. Civ. P. 8(a); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996)). "It is unnecessary to specifically identify the legal basis for a claim." *Id.* (citations omitted). The court, however, is not required to consider claims that were not pleaded in the complaint, but instead were raised in response to a defendants' motion. *Harris v. Colvin*, No. 11-0795-CV-W-SOW-SSA, 2013 WL 12074969, at *10 (W.D. Mo. Nov. 26, 2013), *aff'd*, 577 F. App'x 634 (8th Cir. 2014); s*ee also Toles v. Coastal Mart, Inc.*, 97 Fed. App'x 61, 62 (8th Cir. 2004) (affirming the district court's refusal to consider a retaliation claim that was first raised in a summary judgment motion) (citing *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

32

Even if the court construed Stormo's amended complaint as raising a RICO claim, defendants would be entitled to summary judgment on this claim. Stormo argues that he "has identified in the pleadings how each Defendant participated in the affairs of the enterprise by conspiring to further, conceal and protect the functioning of the enterprise. These acts satisfy the elements of 18 USC 1962(d) if not 1962(c)." Docket 191 at 4. "To state a claim under § 1962(c), a plaintiff must establish: (1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003). Assuming without deciding that Stormo pleaded sufficient facts to satisfy the first two prongs, he fails to state adequate facts to satisfy the third and fourth prong.

Stormo argues that he "has identified in the pleadings at least ten eligible predicate acts from the list of predicates in 18 USC 1961(1) that were committed in support of schemes planned by the conspirators in the enterprise[.]" Docket 191 at 2-3. It is not clear what these acts are, but Stormo claims that they "are the same claims the Defendants seek to eliminate[.]" *Id.* at 3. He also makes references to these claims "employ[ing] the mails and wires[.]" *Id.* He also states that "many of the criminal violations which the Defendants seek to dismiss are the same violations listed in 18 USC 1961(1)[.]" Docket 167

at 4. Stormo seems to be referencing his claims raised under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512 (witness tampering), and 18 USC § 1513 (witness retaliation). These acts are defined as "racketeering activity" under 18 U.S.C.A. § 1961(1).

The court dismissed these claims because the statutes do not provide a private cause of action. Even if Stormo was allowed to bring his claims under the RICO statute, defendants would be granted summary judgment on this claim. Stormo has made extensive discovery requests concerning defendants' supposed wire and mail fraud, but has not provided any support for his claims other than his belief that defendants committed these frauds. The record shows that they did not. Docket 189-16 at 2-3. Stormo has not set forth specific facts in the record showing that there is a genuine issue for trial, and therefore defendants would be granted summary judgment on his RICO claim if it had not already been dismissed.

Stormo argues that he has raised a claim under § 1962(d). This section makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). A claim under 18 U.S.C. § 1962(d) cannot survive if the plaintiff fails to allege the requisite substantive elements of RICO. *See Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (affirming dismissal of a civil RICO conspiracy claim by employees who alleged that their employer and others conspired to market products in an unlawful manner by promoting off-label

34

uses because employees did not sustain injury caused by a RICO predicate act). Because defendants have been granted summary judgment on the underlying predicate acts, they are also granted summary judgment as to Stormo's claim under § 1962(d).

## IV.   Motion to Compel Deposition Answers and Reopen Depositions

Stormo moves to reopen discovery and compel defendants to allow depositions concerning claims other than the seizure of the lift. Docket 192; Docket 200.[3] Stormo alleges that defendants' attorney instructed deponents to not answer questions about other claims. *Id.* While the claims for trespass and conversion survive, Stormo alleges that claims for "trespassing at all properties until six years prior to the filing date, fraud, conversion, conspiracy, wiretap, CPA, ECPA" remain. Docket 200 at 5. These claims have been dismissed. The trespass and conversion claims only survive as to the seizure of the lift. Stormo alleges that he questioned the deponent about the trespass that allegedly occurred in order to take the pictures of the lift to before the seizure. *Id.* at 2. To the extent that a claim of trespass before the seizure of the lift was raised, it has been dismissed. Therefore, Stormo's motion is denied.

## V.   Motion to Compel Production

Stormo moves the court to compel defendants to provide a non-redacted Case History Report. Docekt 196. In response to his request, defendants' attorney told Stormo, "Pursuant to city rules, the name and other identifying

---

[3] Docket 192 and 200 are essentially the same filing. Stormo explains that Docket 200 is the correct version. *See* Docket 201.

data of the complainant have been redacted[.]" Docket 196-3. Stormo argues that defendants should provide a non-redacted Case History Report because defendants have provided reports with complainant's names in other circumstances. Docket 196 at 2.

Although it seems that the name of the complainant is unrelated to Stormo's remaining claims, and not likely to lead to relevant information, defendants have not followed the Federal Rules of Civil Procedure concerning a claim of privilege. Under the Federal Rules,

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Therefore, defendants are ordered to produce a privilege log that satisfies the directives of Rule 26.

## VI.    Remaining Discovery Motions

Stormo filed other motions concerning discovery. *See* Docket 190. Defendants responded, arguing that the issue of qualified immunity should be settled before Stormo's discovery motions are addressed. Docket 202. The court has now settled the qualified immunity issue, and some of Stormo's claims

survive. Therefore, defendants will have 21 days to respond to Stormo's motions concerning discovery.

## VII.   Stormo's Motion to Modify the Protective Order

Stormo moves to modify this court's protective order issued on July 14, 2016, under Rule 54(b), quoted above. Docket 198. He raises numerous issues concerning his ability to conduct discovery. *Id.* In their response, defendants did not raise counter-arguments to Stormo's claims. Docket 202. They characterize Stormo's motion as "an attempt by Plaintiff to reargue the relevancy of thirty-six of Plaintiff's document production requests that the Court previously reviewed and concluded were irrelevant to the claims remaining in this case (or duplicative of prior requests)." Docket 204 at 3. This is not completely accurate.

For instance, when the court granted defendants' protective order concerning defendants' document retention policies, it found that Stormo did not provide any basis for the belief that defendants did not produce all of the emails he requested during discovery. Docket 176 at 4. Now, however, he has done so. In support of his motion, Stormo produced a portion of the deposition of Shawna Goldammer in which she states she sent and received emails concerning the seizure of the lift. Docket 190-1. Stormo alleges that these were not produced, Docket 190, and defendants did not respond to this argument.

Because the court grants defendants time to respond to Stormo's motions concerning discovery, defendants should also respond to the argument

37

in Stormo's motion to modify the protective order within 21 days of receiving this order.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Defendants' are granted summary judgment as to Stormo's claims under 18 U.S.C. §§ 2520, 2707, and 1030. These claims are dismissed. Mayor Huether is granted summary judgment on all claims. He is dismissed as a defendant. Stormo's motion for summary judgment and motion to modify the order for judgment on the pleadings are denied. Defendants' are granted 21 days to respond to Motion to Modify the Scheduling Order and Reopen Discovery and Compel Discovery (Docket 190), which is the only discovery motion not dismissed by the court in this order. The court reserves ruling on Stormo's motion to modify the protective order until defendants respond.

Thus, it is ORDERED

1.      Defendants' Motion for Summary Judgment (Docket 186) is granted in part and denied in part. Defendants Munson, Huether, and Barthel are granted summary judgment on all claims. The City, Kneip, and Does are granted summary judgment on Stormo's Fourth Amendment claims. The City, Tornow, Kneip, and Does are granted summary judgment on Stormo's Wiretap, Electric Communications, and Computer Fraud and Abuse Claims.

2.      Stormo's Motion for Summary Judgment (Docket 194) is denied.

3.      Stormo's Motion to Modify Judgment on the Pleadings (Docket 191) is denied.

4.      Stormo's Motions to Compel Deposition Answers and Reopen Depositions (Docket 192; Docket 200) are denied.

5.      Stormo's Motion to Compel Production (Docket 196) is granted. Defendants are ordered to produce a privilege log that satisfies the directives of Rule 26 by January 9, 2017.

6.      The court grants defendants until January 9, 2017, to respond to Stormo's Motion to Modify the Protective Order (Docket 198) and his Motion to Modify the Scheduling Order and Reopen Discovery and Compel Discovery (Docket 190).

Dated December 21, 2016.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

39